**Richard NELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellee,**

v.

**Richard NELL, In the Matter of John F. Wood, Jr., Appellant.**

Nos. 15423, 71–1085.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1971.

Decided Oct. 8, 1971.

Addendum Nov. 30, 1971.

Steadman S. Stahl, Jr., Hollywood, Fla. (Varon & Stahl, P. A., Hollywood, Fla., on brief), for appellant in No. 15423.

John E. Jenkins, Huntington, W. Va., (Jenkins, Schaub & Fenstermaker, Huntington, W. Va., on brief), for appellant in No. 71–1085.

Robert B. King, Asst. U. S. Atty. (W. Warren Upton, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

No. 15,423 is an appeal from an order of the district court vacating and rescinding its prior order of September 21, 1970. The September 21 order voided the conviction and sentence of Richard Nell on March 4, 1932, on the ground that Nell was not then represented by counsel and did not then effectively waive his right to such representation. The district court's decision turned on misrepresentations of fact made by appellant, Nell, and his attorneys, which were material to the decision in the September 21 order. The district court also found Varon, Nell's Florida attorney, in contempt of court and fined him $100 for his participation in the misrepresentations. Wood, Nell's local attorney, was suspended from practice for six months for acquiescing in the misrepresentations. Wood learned of the misrepresentations after the hearing but prior to the district judge's order and failed to notify the court of this discovery. No. 71–1085 is Wood's appeal from this penalty.

An examination of the factual context in which these cases arose is necessary to explicate our action on these appeals.

Nell's petition attacking his 1932 Mann Act conviction was filed on September 17, 1970. Although the conviction did not appear to have concerned him for nearly forty years after his release, he travelled from Florida to West Virginia with his attorney, Joseph A. Varon, to request the district judge to put aside his regular schedule in order to conduct an immediate hearing. Such a request was most unusual; aside from the context in which it occurred, the decision to grant it deprived the government of an opportunity to investigate the case or answer the petition. Understandably, the district judge was curious about Nell's sudden sense of urgency, and he inquired why an immediate hearing was necessary.

Varon replied that Nell was concerned about the old conviction because of official harassment of him in Florida. A prosecutor there, who, Varon said, had a personal grudge against Nell, had somehow come upon information about the old conviction and was attempting to use it as a basis for revoking Nell's license as a business agent for a labor union. Florida law, he said, prohibits any person convicted of a felony, who has not had his civil rights restored, from holding such an office. Repeatedly, in various ways, the theme was reiterated that Nell was an entirely honorable and up-

standing citizen who was being harassed by a spiteful and petty public officer with a spectre from the long-dead past. That was the reason, the only reason for the requested relief and the immediate hearing.

The district judge thought this reason enough for conducting an immediate hearing. Although the government was formally represented, it had first seen the petition only minutes earlier, and in every real sense the hearing was *ex parte*. The tenor of the hearing is best described in the words of the district judge:

"Well, the important thing here to me, from a commonsense viewpoint, it seems to me that if this man has lived all these years since and has not been involved in any serious criminal activity that—and since he has paid the penalty for this offense, he served his time, I don't see where anybody would be hurt by not [sic: now?] cancelling the record if we have any legal justification for doing it. That is the way I personally feel about it, but I would like to be able to cite in my order, if there is such a decision, a decision that it's the proposition that Johnson against Zerbst, [Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] can and should be given retroactive effect."

Four days later the district judge issued an order holding the 1932 conviction null and void.

In fact, at the time the hearing was held, Nell was about to go to trial in Florida on a charge of bribery. At a subsequent proceeding it was revealed that he was convicted after a Florida trial on September 23. Knowledge of the pending charge could not have been gained by the government in the circumstances under which the hearing had been held. After learning the facts, the government filed a motion under Rule 60 on October 8 to reopen the judgment. A hearing was held on the motion, at which time Varon attempted to justify his falsehood on the ground that the

Florida trial was irrelevant to the issue in the coram nobis hearing, although it seems now to be conceded that Nell's interest in voiding his 1932 conviction lay principally, if not exclusively, in enabling him to testify at his Florida trial that he had never been convicted of a felony. He did testify to that effect at his September 23 trial.

Wood's only involvement in the case was as local counsel. He was unaware of the Florida charges against Nell at the time of the hearing, though he learned of them before the district judge issued his order holding the conviction void.

The pending charge against Nell was not relevant as such to the validity of the 1932 conviction. Since it had not then resulted in a final conviction, it could not have been used to impeach Nell's credibility in his account of the events of 1932. But this was not the thrust of the district judge's objection. The record is barren of any indication that he considered the pending charges of any substantive importance. What was of importance was the fact that Nell, through Varon, made a direct misrepresentation in response to a pertinent inquiry from the judge. Plainly the judge was entitled to know why it was necessary for him to interrupt his normal schedule to hold an immediate hearing on a forty year old conviction, long since served and with no apparent lasting effect. Judges do not sit to decide moot questions of no real importance to anyone. And, it should go without saying, he was entitled to a full and truthful answer to his inquiry.

The response given by Varon influenced not only the scheduling of the hearing but its conduct as well. The government had no opportunity to investigate or respond. Cross examination of Nell was necessarily perfunctory. Who can say what an investigation normal in such cases would have revealed? The judge himself expressed some surprise that the district judge presiding in 1932, before whom he had practiced often, would have proceeded in such a sum-

mary fashion as Nell described. Yet he was prepared to credit Nell's testimony without even asking for corroboration, and it is clear that this judgment was influenced by the account of what was purportedly being done to Nell in Florida. It may well be that Nell spoke truly about the events of 1932, but the fact that he lied at his hearing, or acquiesced in his lawyer's lie, assuredly has a bearing on the question.

For these reasons, Varon's conduct at 'the hearing was disgraceful and utterly unworthy of an officer of the court. Local counsel is also subject to criticism to the extent of his participation or acquiescence in that conduct.

However, the dispositive question is whether the procedure followed below was constitutionally adequate to provide a foundation for the extreme sanction of suspension from practice to which Wood was subjected, a sanction which had an effect far more serious than the relatively lenient punishment of Varon.

Unlike Varon, Wood was not punished in the exercise of the judge's power of summary contempt, nor could he have been, since he was innocent of any wrongdoing committed in the presence of the court. His offense, one of omission, occurred only after he had learned of Varon's misrepresentation. We cannot accept his argument that he committed no offense at all; he had a duty to disclose the misrepresentation to the court once he learned of it. His neglect is hardly comparable to Varon's mendacity, but he can not be said to be entirely blameless.

■ Due process, however, requires that disbarment or suspension proceedings be preceded by adequate notice and an opportunity to prepare a defense. Those requisites, we think, were not met here.

It is true that Wood was given notice that a proceeding of some kind was to be held, and that the complaint related to misconduct of Nell's lawyers, possibly including himself. However, the relief sought by the government in the case was limited to a reopening of the judgment in Nell's favor. There is nothing in the notice to suggest that the proceedings would include, nor any notice later that they would be expanded to include, disciplinary proceedings against the lawyers. Thus Wood was never made sufficiently aware, until the hearing itself, of the charge against him, and he had no opportunity to prepare to defend himself effectively or procure counsel to assist him. For that reason, the suspension from practice cannot be upheld. We may add that in view of the fact that he has already served all or the major portion of the suspension, he should not be subject to further proceedings.

■ As to Nell's appeal, the reopening of the judgment in his favor pursuant to the motion under Fed.R.Civ.P. 60 did not operate as a final judgment adverse to him. His case remains pending in the district court. The order under Rule 60 was an interlocutory one from which no appeal may now be taken.

We should add that the outrageous conduct of Varon on Nell's behalf seems to be the sort of personal affront to the trial judge that the Supreme Court has held should require the entry of a different judge into the case. Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532; Johnson v. Mississippi, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423. We think that subsequent proceedings in the case, if Nell chooses to prosecute it further, should be conducted by a different district judge.

No. 15423, appeal dismissed.

No. 71–1085, reversed.

## ADDENDUM TO OPINION

In the joint decision of these two cases on October 8, 1971 the Court intended to reverse and vacate altogether the order of the District Court suspending appellant, attorney John F. Wood, Jr., from practice for six months. The basis of our decision was that due process had not been accorded him, in that the suspension proceedings had not been "pre-

ceded by adequate notice and an opportunity to prepare a defense".

However, from portions of our opinion it might be inferred that, nevertheless, we adjudged him guilty of conduct warranting suspension. These parts include, e. g., the statements that we "cannot accept his [Wood's] argument that he committed no offense at all", that "he cannot be said to be entirely blameless" and that "in view of the fact that he has already served all or the major portion of the suspension, he should not be subject to further proceedings". But the pith of decision was contained in the statement that "the suspension from practice cannot be upheld".

On the other hand, should the appellant Wood believe that, despite our decision, he ought to have an opportunity to refute, if he can, the adverse implications that might be drawn from the opinion, he is given leave to apply to the District Court for, and the District Court is authorized to grant, a hearing on the accusation premising the disciplinary proceedings against him.