Maxine Vincent SMITH, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

G. L. McGRIFF, Individually and in his official capacity as Chief of the Driver License Division, his agents, servants, assigns, and successors in office, et al., Defendants.

Civ. A. No. 76–53–N.

United States District Court, M. D. Alabama, N. D.

Nov. 12, 1976.

er would have the burden of satisfying the court that the forfeiture provisions had been reasonably applied.

John L. Carroll, Joseph J. Levin, Jr., Pamela S. Horowitz, and Morris S. Dees, Jr., Montgomery, Ala., for plaintiffs.

William J. Baxley, Atty. Gen., and Kent B. Brunson, Asst. Atty. Gen., State of Ala., Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, JOHNSON, Chief District Judge, and VARNER, District Judge.

JOHNSON, Chief District Judge:

The plaintiffs in this cause, Maxine Vincent Smith and the Alcoholism Council of Montgomery, Elmore and Autauga Counties, attack the constitutionality of Title 36, Section 68 of the Code of Alabama 1940 (Recomp.1958)[1] and certain practices of the

1. Title 36, Section 68 states, in pertinent part: "The director of public safety is hereby authorized to suspend the license of a driver without preliminary hearing upon a showing by court records or other sufficient evidence that the licensee: . . . is incompetent to drive a motor vehicle . . . . Upon suspending the license of any person as hereinbefore in this section authorized, the director of public safety shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing as early as practical within not more than thirty days after receipt of such request . . . . Such hearing shall be before the director of public safety or his duly authorized agent, and upon such hearing the director of public safety or his duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers and may require a re-examination of the licensee. Upon such hearing the director of public safety or his duly authorized agent shall either rescind his order of suspension or, good cause appearing therefor, may extend the suspension of such licensee or revoke such license. If the hearing is conducted by a duly authorized agent instead of by the director of public safety himself, the action of such agent must be approved by the director of public safety. . . Any person denied a license or whose license has been cancelled, suspended or revoked by the director of public safety except where such cancellation or revocation is mandatory under the provisions of this article shall have the right to file a petition within thirty days thereafter for a hearing on the matter in the county court, circuit court or court of like jurisdiction in the county wherein such person resides, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon thirty days' written notice to the director of public safety, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner is

Alabama Department of Public Safety, insofar as they require or permit pre-hearing suspensions of licenses of alcoholics or of persons believed by the Department to be alcoholics. The plaintiffs also maintain that the statute involved is unduly vague and that the statute and defendants' policies violate both the Equal Protection Clause of the Fourteenth Amendment and plaintiffs' First Amendment rights of association. They assert that the defendant medical facilities release and have released medical records contrary to the prohibitions under 42 U.S.C. § 4582.

The plaintiffs represent the class of all persons whose Alabama driver licenses are or may be suspended without a hearing or on arbitrary grounds. They also represent two subclasses. Subclass—1 consists of alcoholics whose driver's licenses are or may be suspended because of their alcoholism. The members of subclass—2 are alcoholics and alcohol abusers who have undergone treatment in defendant medical facilities and whose medical records have been or may be released contrary to law.

Defendant McGriff is Chief of the Driver License Division ("the Division"). As such, he supervises Division employees and notifies drivers of license suspensions. Defendant Dothard is Director of the Department of Public Safety ("the Department"). His powers include enforcement of the driver licensing laws, and he has the ultimate responsibility for, *inter alia,* the suspension of driver's licenses. Defendants Watts and Byrd are State Troopers assigned to the Division. The defendant Medical Advisory Board (MAB) is an anonymous panel of physicians established by the Division to advise it on the issuance, suspension and revocation of driver's licenses. The defendant medical facilities (including the named facility Greil Memorial Hospital), institutions designed to help persons with alcohol-related problems, are hospitals which have treated members of subclass—2 and re-

leased those licensees' medical records to the Division.

This action arises under the First and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and 42 U.S.C. § 4582. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331.

A three-judge panel was convened pursuant to 28 U.S.C. § 2281, and the case is now submitted upon depositions and other documentary evidence.

Plaintiff Smith is a forty-three year old alcoholic. In July, 1975, she was involved in an automobile accident which was duly investigated by a police officer but for which no traffic citation was issued. Six weeks later, the Department of Public Safety, Driver's License Division, notified Ms. Smith that, since she had no car insurance, her license would be suspended under Alabama's Motor Vehicle Safety Responsibility Law [2] and that she could request a pre-suspension hearing. She did request such hearing, which was held October 9, 1975.

During this time span the Division had received information leading it to believe that Ms. Smith had a drinking problem. The Division thereupon wrote to Ms. Smith, stating that an "interview-investigation" was being conducted into her driving status and that such interview would be held October 1, 1975.

Corporal Byrd conducted the October 1 interview-investigation. Ms. Smith readily told him that she was an alcoholic; she answered all questions concerning her drinking. She was not informed that her license could be suspended based on the information she was then giving. At the end of the interview, Corporal Byrd warned her not to tell anyone else that she was an alcoholic because her driver's license could be taken away.

entitled to a license or subject to suspension, cancellation, or revocation of license under the provision of this article."

**2.** Under Alabama's statutory scheme, one may in certain instances be required to post proof of financial responsibility with the Division. Failure to do so results in suspension of registration tags and certificates.

Two months later, Sergeant Watts went unannounced to the plaintiff's home, in order to continue the Division's investigation into Ms. Smith's driving status. He and Ms. Smith talked for about thirty minutes regarding her alcoholism. According to Sergeant Watts, Ms. Smith answered his questions very openly and, in his opinion, very honestly. There is conflicting testimony as to whether or not Sergeant Watts informed the plaintiff that the interview could lead to immediate suspension of her license. After talking with Ms. Smith, defendant Watts interviewed other people who knew the plaintiff.

The following day, December 4, 1975, the Division sent plaintiff Smith a notice that her license would be suspended for one year, effective December 7, 1975. Under "Reason for Action," the word "Alcoholic" was checked. On the back of the form was a statement regarding one's right to a pre-suspension hearing. However, when Ms. Smith called the Division to find out how she could prevent the suspension, she was told that all she could do was to send in medical forms which the Division would evaluate in determining whether or not to reinstate her license. Ms. Smith (and possibly her doctor) filled out the forms and mailed them back to the Division. She heard no more about her license until February 9, 1976, when she was told by letter that the Division had decided to hold her license under suspension.

■ The class as defined by the plaintiffs does not meet the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure. The Driver's License Division suspends licenses without a hearing for very different traffic convictions or violations. Not all of these suspensions raise the same legal issues, nor do they all necessarily require the same due process procedures.

This Court certifies the class of all persons who are alcoholics, or who are believed by the Department of Public Safety to be alcoholics or alcohol abusers, whose driver's licenses are or may be suspended without a pre-suspension hearing. This class action is appropriate under Rule 23(b)(2) and satisfies the requirements of Rule 23(a).

We also find that both subclasses defined by the plaintiffs meet the requirements of Rule 23 and may be certified. *See Francis v. Davidson*, 340 F.Supp. 351 (D.Md.1972), *appeal dismissed*, 409 U.S. 907, 93 S.Ct. 223, 34 L.Ed.2d 168.

■ The state's power to revoke or suspend driver's licenses is limited by the due process restraints of the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Jennings v. Mahoney*, 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971); *Salkay v. Williams*, 445 F.2d 599 (5th Cir. 1971). Due process in this area requires that, absent an emergency situation, the licensee be given notice of the charges and a hearing before such suspension takes effect.

> While "[m]any controversies have raged about . . . the Due Process Clause," it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective.

*Bell v. Burson, supra*, 402 U.S. at 542, 91 S.Ct. at 1591 [emphasis in original.] *See also Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Mr. Justice White discussed the development of the law of procedural due process in his concurring opinion in *Arnett v. Kennedy*, 416 U.S. 134, 187, 94 S.Ct. 1633, 1660, 40 L.Ed.2d 15 (1974):

> In recent years, however, in a limited number of cases, the Court has held that a hearing must be furnished at the first stage of taking, even where a later hearing was provided. This has been true in the revocation of a state-granted license, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) . . .

*Bell v. Burson, supra*, requires that a licensee be given notice and hearing *before* suspension except in emergency situations. *Bell* itself did not explain what circum-

stances would constitute an emergency except to cite as examples *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), and *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), but in *Fuentes* the Court explained that the situations would have to be "truly unusual" ones, "extraordinary" ones, such as those in which earlier courts have allowed pre-hearing seizures.[3] 407 U.S. at 90–91, 92 S.Ct. 1983. The court went on to formulate the elements necessary, in those cases, for seizure without hearing:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

407 U.S. at 91, 92 S.Ct. at 2000.

The due process attack on the statute and defendants' policies raises two basic questions:

1. Under what circumstances may the Department justify summary suspension under the "emergency situation" doctrine?

2. Is the plaintiff class afforded a pre-suspension hearing under the statute in issue and under the policy enforcing such statute?

## Emergency Situations

█ The defendants' actions belie any claim that they felt Ms. Smith's driving status presented an emergency situation. After her frank statement on October 1st,

that she was an alcoholic, the Division waited a full two months before further investigating the problem. Moreover, "[t]here is no evidence that the 'danger' posed by any of the members of [the] class elicited any swifter response." *Jones v. Penny*, 387 F.Supp. 383, 394 (M.D.N.C.1974). We find, therefore, that, under the facts presented, there does not exist a special need for very prompt action, and thus summary license suspension cannot be justified.

This is not to say that a *bona fide* emergency situation may never exist in relation to alcohol abusers. "Due process may adjust to the terrible hazard which these people represent." *Pollard v. Panora*, 411 F.Supp. 580, 585 (D.Mass., 1976). In *Ewing v. Mytinger & Casselberry, Inc., supra*, the Administrator of the Food and Drug Administration was allowed to seize certain vitamin products upon his determination of "probable cause to believe from facts found, without hearing, . . . that the misbranded article is dangerous to health, or . . . fraudulent." 339 U.S. at 595, 70 S.Ct. at 871 and *passim*. While recognizing that the driver's interest in practical mobility is greater than the interest invaded in *Mytinger & Casselberry*, we find that the state's compelling interest in highway safety,[4] an interest not implicated in *Bell v. Burson, supra*, justifies summary suspension of a driver's license.

## Presuspension Notice and Hearing

Section 68, Title 36 of the Code of Alabama 1940 (Recomp.1958) provides for summary license suspension, upon a showing of court records and other sufficient evidence that a licensee is incompetent to drive. The category of "incompetent to drive a motor

---

3. *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (protect public from misbranded drugs); *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (protect against a bank failure); *Phillips v. Comm'er*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (collect taxes); *Central Union Trust Co. v. Garvan*, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403 (1921) (meet the

needs of the war effort); *North American Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (protect public from contaminated foods.)

4. "It cannot be denied that there is a compelling State interest to protect the public from drunk drivers." *Chavez v. Campbell*, 397 F.Supp. 1285, 1288 (D.Ariz., 1973).

vehicle" includes people who are deemed to be incompetent because of alcohol abuse.[5]

Lieutenant Coleman, Chief Hearing Officer of the Driver Improvement Unit, testified that pre-suspension notices are not sent out in any medical or mental investigations, such as the one conducted in plaintiff Smith's case. Moreover, according to Lieutenant Coleman, although suspensions are stayed pending post-suspension hearings afforded at the driver's request, the Division rarely notifies drivers of their right to such hearings.[6] Therefore, defendants' claim that plaintiff Smith ignored an "available remedy" must be rejected. Since a driver must exhaust administrative remedies before appealing a license suspension to the Circuit Court, *Ex parte State ex rel. Lyerly*, 38 Ala.App. 630, 91 So.2d 233 (1956)[7], we find equally unconvincing the defendants' argument that plaintiff Smith could have pursued judicial remedies.[8]

The defendants admit that the Division does not provide formal presuspension hearings for persons in Ms. Smith's situation. They argue that the investigation conducted by Sergeant Watts in December of 1975 was a hearing appropriate to the nature of the case. This investigation, they contend, gave Sergeant Watts a chance to see Ms. Smith in "her daily routine," an opportunity which defendants felt would help them determine her competence to drive. By no stretch of the judicial imagination can such an investigation be considered "notice and opportunity for hearing appropriate to the nature of the case." *Bell v. Burson, supra*, 402 U.S. at 542, 91 S.Ct. at 1591, citing

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

*Notice*

■ Notice requires that the licensee be told the precise nature of pending or threatened action. *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938). The notice deemed to be a part of due process includes, by definition, the requirement that adequate time be provided between the giving of notice and the hearing. A licensee must be afforded time to meet the evidence. *Nell v. United States*, 450 F.2d 1090 (4th Cir. 1971). Upon careful consideration of the evidence submitted, this Court finds that plaintiff Smith did not have adequate notice of the Division's contemplated action. We further find that, under the policies and practices of the defendants, the plaintiff class does not receive notice sufficient to apprise its members of possible and probable license suspensions.

*Hearing*

■ *Ex parte* investigations conducted into the plaintiff class's medical problems do not constitute a "hearing" and do not comport with due process. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Southern Stevedoring Co. v. Voris*, 190 F.2d 275 (5th Cir. 1957). The defendants base their determination of a driver's competence on an interview in

---

**5.** The Driver Improvement Manual, a Division interdepartmental document, states that Title 36, Section 68 "is used in cases of physical conditions, mental conditions, habitual user [sic] of narcotics and habitual drunkards."

**6.** From October 1, 1974, to September 30, 1975, the Department of Public Safety revoked or suspended over 37,000 driver's licenses. In that time period, only 464 post-deprivation hearings were conducted. Pre-deprivation hearings totalled 1,383. Fiscal Year Report, Driver Improvement Activities, Plaintiffs' Exhibit A to Coleman Deposition.

**7.** This much of the rule in *Lyerly, supra*, was not disapproved by the Alabama Supreme

Court in *May v. Lingo*, 277 Ala. 92, 167 So.2d 267 (1964).

**8.** Had plaintiff been notified of her right to administrative and judicial appeals effecting a stay of her suspension pending hearing, as provided by the Department of Public Safety's practice in the case of administrative appeals and by operation of law in appeals to Circuit Court, *Ex parte State ex rel. L. B. Sullivan*, 262 Ala. 188, 78 So.2d 322 (1955), and had the burden of proof on these hearings remained with the State, due process would have been satisfied under the holding in *Jennings v. Mahoney*, 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971).

which the licensee does not know that whatever he or she reveals may be used to suspend the license, on an investigation during which the Department gathers *ex parte* evidence and is free to accept or reject whatever information it receives, and possibly on doctors' reports if obtainable.[9] One man in the Department (the Chief Hearing Officer) decides by himself either to suspend (or to not suspend) the license, or to send all investigative reports to the Medical Advisory Board (MAB).[10] Without ever meeting any licensee, these doctors diagnose the driver's illness and make recommendations concerning his or her competence to drive. The chief hearing officer then makes his final decision regarding suspension. At no time is the licensee given a chance to see the evidence or to rebut reports or to cross-examine witnesses. Once a state decides to grant property rights or privileges to its citizens, due process safeguards attach to those rights and privileges. *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964); *Bell v. Burson, supra*. Driver's licenses may not be suspended through secret and formless proceedings such as those evidenced in this action. Unless a licensee may confront reports before the State withdraws a license, he or she has not been accorded the adjudicative process which is due. *Freitag v. Carter*, 489 F.2d 1377 (7th Cir. 1973).

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions . . . Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property . . . . . . . For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170–172, 71 S.Ct. 624, 647–49, 95 L.Ed. 817 (Frankfurter, J., concurring).

*Fuentes v. Shevin*, 407 U.S. at 80–81, 92 S.Ct. at 1994. *Hornsby v. Allen, supra.*

■ Absent a *bona fide* emergency situation, a driver must be afforded notice of possible suspension and the reasons therefor, and a hearing in which he or she may present evidence, and call and cross-examine witnesses. *Reilly v. Pinkus*, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949). In conformity with procedures followed by the Division for most licensees, suspension must be stayed pending the hearing. During the hearing the licensee should be made aware of the medical and Division standards by which he or she is being evaluated. *Hornsby v. Allen, supra*. If after such hearing the director (or hearing officer) believes the licensee is incompetent to drive, he may suspend the license upon a finding based on the evidence and the Department's Standards. *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973); *Hornsby v. Allen, supra*. He must immediately inform the driver of appeals available.

Title 36, Section 68 allows summary suspension only upon sufficient evidence. This Court interprets that language to require a *bona fide* emergency situation to exist before pre-hearing suspension may be justi-

---

**9.** Ms. Smith had no time to submit reports. The letter notifying her of the suspension was *mailed* three days before the suspension became effective.

**10.** MAB is an anonymous panel of ten doctors. Five doctors separately review the Department's report on a licensee. Since MAB has at the maximum only one or two doctors from a specialty, *at least* three doctors reviewing an alcoholic's report, for example, will have had no special training in psychology or psychiatry.

fied. Under the doctrine of *Bell v. Burson*, the statute attacked herein does not deny the plaintiff class due process.

However, this Court finds that the policy and practice of the defendants has been to deny notice and hearing to members of the plaintiff class where no emergency situation exists. Accordingly, this policy and practice is found to be unconstitutional and is to be enjoined under the order entered this date.

■ Plaintiffs challenge Title 36, Section 68 as being unconstitutional in that it fails both to give fair notice of what behavior is proscribed by the State and to provide standards for the Division's suspension decisions.

The statute lists various behavior which may lead to summary license suspension "upon a showing by court records and other sufficient evidence . . ." This list gives a driver adequate notice of the general disabilities or driver inadequacies the State considers in suspending a license. Although the statute does not detail what is meant by "incompetent," that term is somewhat clarified by Title 36, Section 66, which provides:

> A driver's license shall not be issued to the following persons: . . . any person afflicted with, or suffering from, a physical or mental disability which, in the opinion of the director of public safety or examining officer will prevent such person from exercising reasonable and ordinary control over a motor vehicle.

These two provisions read together sufficiently inform drivers what infirmities may lead to license suspension. *Jones v. Penny, supra.*[11]

The Department derives its medical standards from information provided by the American Medical Association and the American Association of Motor Vehicle Administrators. Even though the statute itself does not provide standards for determining a driver's competence, we find that

Section 68 is not unduly vague since a licensee must be informed at the hearing of the standards being applied by the hearing officer, and since the officer must make a finding based explicitly on the evidence and the Department's standards. Under these safeguards, each driver should fully understand the basis of any action taken. *In re Ruffalo, supra.*

■ Plaintiffs' equal protection argument is premised on their assertion that the defendants suspend the licenses of all alcoholics or suspected alcoholics, regardless of the drivers' competence to drive. If this were the case, plaintiffs' claim that this policy amounts to the unconstitutional use of an irrebuttable presumption might be a strong attack on those policies. However, there is little or no evidence that the defendants penalize alcoholic drivers because of their status.

During the year from October 1974 through September 1975, of the fifty-two persons investigated by the Division for alcohol addiction or alcoholism, only twenty had their licenses suspended. The year before, an even lower proportion of possible alcoholics had their licenses suspended. Although the Court has no statistics before it concerning the investigation suspension ratio for *all* drivers, the data adduced indicates that in any case no irrebuttable presumption against alcoholics is employed by the Division. Even in Ms. Smith's case, although she told the Division that she was an alcoholic, it continued its investigation of her. Furthermore, it did not suspend the license of Mr. Hampstead Bentley, a friend of Ms. Smith, upon discovering that he was an alcoholic.

Under the facts submitted to this Court, we find that the defendants' policies regarding license suspension of alcoholics do not violate the Equal Protection Clause of the Fourteenth Amendment.

11. In *Jones v. Penny*, although the license law was held not to provide procedural due process, the Court found that the phrase "is incompetent to drive" was not unduly vague, since the statute set out the general principle and left the details of administration to the state highway department.

682

Given this Court's conclusion that the defendants do not penalize alcoholic drivers because of their status as alcoholics, we find that the statute and defendants' enforcement of the statute do not operate to chill the right of association enjoyed by members of subclass–1.

[11] The plaintiffs have submitted no evidence that any defendants have violated the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act, 42 U.S.C. § 4582. Although the Division admits that it routinely asks drivers to sign medical release forms, there is no evidence that any of the named or unnamed defendant medical facilities have ever released records to the Division. The Division's policy of having drivers sign these release forms is indeed extremely questionable. However, the gravamen of § 4582 is the unlawful release and use of medical records. Neither the named plaintiff and plaintiff association individually, nor the plaintiff class, have proven a single violation of the Act.

### CONCLUSION

Thus, there is no question but that drunk drivers should be kept off the streets, roads and highways. However, we must and do hold that due process requires that, before a citizen has his or her driver's license revoked, certain basic procedural rights be observed. This Court now holds that the policies and practices of the defendants herein (with the exception of the defendant medical facilities) violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, insofar as they fail to provide adequate pre-deprivation notice and hearing to drivers whose licenses may be suspended for reasons related to alcohol abuse except in emergency situations as hereinabove defined. An order granting a declaratory judgment and injunction will be entered accordingly.