Joseph Alvin TOLBERT, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

G. L. McGRIFF, Individually and in his official capacity as Chief of the Driver License Division, his agents, servants, assigns, and successors in office, E. C. Dothard, Individually and in his official capacity as Director of the Department of Public Safety, his agents, servants, assigns, and successors in office, the Medical Advisory Board to the Driver License Division, and anonymous members of the Board, Individually and in their official capacities, their agents, servants, assigns, and successors in office, Defendants.

Civ. A. No. 76–122–N.

United States District Court,
M. D. Alabama, N. D.

Nov. 12, 1976.

John L. Carroll, Joseph J. Levin, Jr., Pamela S. Horowitz, and Morris S. Dees, Jr., Montgomery, Ala., for plaintiffs.

William J. Baxley, Atty. Gen., and Kent B. Brunson, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, JOHNSON, Chief District Judge, and VARNER, District Judge.

JOHNSON, Chief District Judge:

In this action, plaintiff seeks declaratory and injunctive relief for himself and for the class he represents for deprivation of their right to due process in the suspension of their driver's licenses. Jurisdiction in this matter is pursuant to 28 U.S.C. § 1331 and § 1334(3). This action was filed in this Court on April 6, 1976. A three-judge panel was constituted pursuant to 28 U.S.C. § 2281. The case was submitted upon depositions and other documentary evidence on September 2, 1976.

Plaintiff Joseph Alvin Tolbert is a truck driver from Montgomery, Alabama. He brings this action in his own behalf and on behalf of the class consisting of all persons whose Alabama driver's licenses have been or may be suspended without the licensees first receiving a hearing. Plaintiff also brings the action on behalf of a subclass of persons who have lost their licenses because of a recommendation of the Alabama Medical Advisory Board. The defendants in this case are variously connected with the suspension of driver's licenses by the State of Alabama. Defendant G. L. McGriff is the Chief of the Driver License Division of the

Department of Public Safety, which is charged with the enforcement of laws permitting suspension of licenses.[1] Defendant E. C. Dothard is the Director of the Department of Public Safety. The Medical Advisory Board is a body, composed of physicians, that advises the department in certain suspension cases.

Section 68 of Title 36 of the Alabama Code authorizes the Director of the Department of Public Safety to suspend a person's driver's license on the ground of incompetence to drive a motor vehicle without first affording the person a hearing. This category includes those who are medically incompetent.[2] Plaintiffs assert that such action violates the Due Process Clause of the Fourteenth Amendment. They ask this Court to issue a declaratory judgment that such a procedure is unconstitutional, and to enjoin it. They further seek injunctive and declaratory relief against the practice of interrogating licensees without warning them of the possible use of any statements that they make and ask the Court to enjoin defendants from establishing or utilizing an anonymous Medical Advisory Board that makes judgments without giving notice or an opportunity to be heard.[3]

■ The proposed class of all persons whose licenses have been suspended without a pre-suspension hearing fails for lack of the typicality of the representative, which is required by Rule 23(a)(3) of the Federal Rules of Civil Procedure.[4] However, a class of all persons whose licenses have been or may be suspended for medical reasons would be proper. The proposed subclass of persons deprived of a driver's license by recommendation of the Medical Advisory Board is also proper. The typicality, commonality, and numerosity [5] requirements of Rule 23 are met by this class. And the defendants have acted and propose to act on grounds generally applicable to the class, so that injunctive and declaratory relief is appropriate for the class as a whole.

Plaintiff Tolbert had brain surgery as a youth, and has been required to take the medications dilantin and valium since that time in order to avoid seizures. He can recall only one seizure during the past fifteen years, and that occurred during a period when he had ceased taking the medication. He maintains, without contradiction, that he has now resumed taking the drugs and has had no more difficulties in that regard. His Alabama driving record shows no seizure-related problems. Upon

---

1. Title 36, Section 58(56), Code of Alabama 1940 (Recomp.1958).

2. "The director of public safety is hereby authorized to suspend the license of a driver without preliminary hearing upon a showing by court records or other sufficient evidence that the licensee: Has been charged with an offense for which mandatory revocation of license is required upon conviction; is an habitually reckless or negligent driver of a motor vehicle; is an habitual violator of the traffic laws; is incompetent to drive a motor vehicle; has permitted an unlawful or fraudulent use of such license; or has committed an offense in another state which if committed in this state would be grounds for suspension or revocation." Title 36, Section 68, Code of Alabama.

3. Plaintiffs also ask that the suspension of plaintiff Tolbert's license be lifted. However, his license has been restored, so that this request for relief is mooted. However, the defendants still maintain the propriety of the procedures by which Tolbert was deprived of his license. As his medical condition continues as before, he could still be deprived of his license in the same manner. Thus the case is still

appropriate for declaratory and injunctive relief even without reference to the class action feature. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *United States v. Richberg*, 398 F.2d 523 (5th Cir. 1968).

4. Plaintiff Tolbert had his license suspended for medical reasons. This suspension was discretionary with the Director of the Department of Public Safety. The evidence in this case shows that there is a critical difference in the way that medical and non-medical discretionary suspensions are conducted. (In non-medical discretionary suspension, the licensee is informed of a right to *de novo* appeal, whereas in medical suspensions he is not.) Further, mandatory revocations of licenses are treated entirely differently by the state from any discretionary suspension.

5. During the period from October 1, 1974, to September 30, 1975, for example, 236 persons had their driver's licenses suspended for medical reasons.

receipt of an outside complaint, the Driver License Division began investigating Tolbert as possibly unfit to continue driving. The investigation was conducted by Sergeant E. C. Fordham. On December 4, 1975, Sergeant Fordham conducted a tape-recorded interview with Tolbert, during which he questioned him about his medical problems. Tolbert misled Sergeant Fordham in this regard, denying that he took dilantin and valium.[6] At least two other persons were interviewed, and the results of the investigation were turned over to Lieutenant Coleman of the Driver License Division. A report was requested from plaintiff's doctor and given to Lieutenant Coleman[7] as later an electroencephalogram was requested and provided. Lieutenant Coleman requested an opinion from the state Medical Advisory Board on Tolbert's case, and it gave an unfavorable recommendation. Thereafter, Lieutenant Coleman decided to suspend Tolbert's license, and he was so informed. He was not told of any opportunity to contest the decision. Other than the interview with Sergeant Fordham, Tolbert was not given the opportunity to present his side of the story. He was not called before Lieutenant Coleman or the Medical Review Board, whose members did not in fact even meet with each other. The evidence indicates that plaintiff Tolbert's experience is representative of the procedure followed with other members of the class.

■ The interest of the holder of a driver's license in keeping that license is one that is protected by due process. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). That interest is particularly strong in this case, as plaintiff Tolbert lost his job as a truck driver because the suspension of his license prevented him from performing his duties. In *Bell v. Bur-*

*son,* the Supreme Court held that "due process requires that when a state seeks to terminate an interest such as that here involved, [a driver's license] it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Id.* at 542, 91 S.Ct. at 1591.[8] The defendants rely principally on two theories to demonstrate that their discretionary suspension procedures do not violate the rule of *Bell.* They maintain that the interview that Sergeant Fordham had with Tolbert, and presumably any interview with other members of the plaintiff class, constituted the hearing that due process requires. Further, they submit that the administrative and judicial review of a suspension permitted by Section 68 of Title 36 are sufficient to satisfy due process.

■ The "formality and procedural requisites" of a hearing can vary, *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) and they should be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). But an interview by an investigating officer can hardly be elevated to the level of a hearing. The Fifth Circuit distinguished between an investigation and a hearing in *Genuine Parts Co. v. FTC,* 445 F.2d 1382 (5th Cir. 1971). It said "the purpose of an investigative proceeding conducted by an administrative agency 'is to discover and produce evidence not to prove a pending charge or complaint, but upon which to make one if, in the [agency's] judgment, the facts discovered should justify doing so'. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 501, 90 L.Ed. 614 (1946). Id. at 1388." The court went on to say "An investigation discovers and produces evidence; an adjudica-

---

**6.** Plaintiff explained that he made these incorrect statements because he feared that he would lose his license if he were candid.

**7.** Dr. Poteet indicated that Tolbert was having no problems.

**8.** An exception is made for "emergency situations." *Bell v. Burson,* 402 U.S. 535, 542, 91

S.Ct. 1586, 29 L.Ed.2d 90 (1971). Defendants do not assert that this was an emergency and the fact that the state took at least four months to suspend the license and that plaintiff's Alabama driving record revealed no seizure-related difficulties indicates that such a position would be untenable.

tion tests such evidence upon a record in an adversary proceeding before an independent hearing examines to determine whether it sustains whatever charges are based upon it." *Id.* at 1388. The interview conducted by Sergeant Fordham appears to be an investigation in the classic sense, involving nothing more than Fordham asking Tolbert some questions. No effort was made to confront Tolbert with any of the evidence against him. And the due process requirement of a hearing "embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1937). In *Bell v. Burson, supra,* the Supreme Court cited *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as presenting the standard of due process that applied in driver's license cases. *See Bell v. Burson, supra,* at 539, 541, and 542, 91 S.Ct. 1586. And *Goldberg v. Kelly* states that "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." 397 U.S. at 269, 90 S.Ct. at 1021. And quoting from *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), it continued: "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the

individual so that he has the opportunity to show that it is untrue." *Goldberg v. Kelly, supra,* 397 U.S. at 270, 90 S.Ct. at 1021. Tolbert's license was suspended largely on the basis of the reports of the Medical Advisory Board, yet Tolbert never saw those reports. Rather than confronting Tolbert with charges, the state simply tried to get information from him. The gathering of information simply does not, by itself, constitute a hearing.

The procedure followed in Tolbert's case is typical of that in all medical cases. Lieutenant Coleman referred to an interview of a licensee before the department had decided on a medical suspension as being part of the "investigation," not as being a hearing. He further indicated that a licensee receives a hearing only if he requests one following notice of his suspension.[9] This clearly indicates that, at least prior to the announcement of the suspension, the licensee is not afforded a hearing.

■ The defendants maintain that the possibility of appealing the department's decision to suspend brings the state's procedure into conformity with the requirements of due process. Under Title 36, Section 68, a person whose license has been suspended may obtain a hearing within thirty days, and where the suspension is discretionary he may later obtain a *de novo* hearing in state court.[10] Under Alabama law, when a licensee files a petition for a *de novo* hearing in state court, the filing acts to vacate the order of suspension. *Ex parte State ex rel. L. B. Sullivan,* 262 Ala. 188, 78 So.2d 322 (1955). Though administrative reme-

9. This notice occurs during the period between when the decision is made by the department to suspend and when the suspension actually takes effect.

10. ."Upon suspending the license of any person as hereinbefore in this section authorized, the director of public safety shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing as early as practical within not more than thirty days after public safety or his duly authorized agent, . . . Any person denied a license or whose license has been cancelled, suspended or revoked by the director of public safety except where such cancellation or revocation is mandatory under the provisions of this article shall

have the right to file a petition within thirty days thereafter for a hearing on the matter in the county court, circuit court or court of like jurisdiction in the county wherein such person resides, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon thirty days' written notice to the director of public safety, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner is entitled to a license or subject to suspension, cancellation, or revocation of license under the provision of this article." (1939, p. 300) Title 36, Section 68, Code of Alabama.

dies must be exhausted before an appeal can be taken, *Ex parte State ex rel. Lyerly,* 38 Ala.App. 630, 91 So.2d 233 (1956), Lieutenant Coleman testified that filing for a hearing with the Department of Public Safety was considered as staying a suspension. He further stated that suspensions were made effective as of a date later than notice of the suspension. Thus when a license was suspended, the licensee could request a hearing before the suspension took effect. This request would stay the suspension until the hearing was over, and then the licensee could petition for a *de novo* hearing in state court, which would also stay the suspension. He could, therefore, obtain a hearing before losing the right to drive. *Bell v. Burson, supra,* only requires a hearing before "the termination becomes effective," not before it is announced. And *Jennings v. Mahoney,* 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971), held that where a court order stayed a suspension until a hearing had been conducted, the right to a hearing had been satisfied. Therefore, defendants contend that their procedure was proper.

However, plaintiff Tolbert did not receive notice of his right to appeal the suspension of his license. And Lieutenant Coleman stated in his deposition that the form letter notifying a licensee of his right to appeal is not sent in cases involving medical problems.[11] Thus, the department's procedure in these cases still would not be constitutionally sound because due process requires notice as well as a hearing. *See Bell v. Burson, supra; Wisconsin v. Constaneau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Goldberg v. Kelly, supra; Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In instances where licenses are being suspended for medical and mental incompetence to drive, the licensees are not being afforded the hearing and notice that due process requires.

There are at least two approaches that defendants can take to conform with constitutional requirements. They can, for example, institute hearings before a license is suspended. Another potential approach would be to give notice to a licensee before the suspension takes effect of the possibility of a *de novo* appeal, which would stay the suspension until the appeal was concluded. Whatever procedure is adopted, it must give the licensee the opportunity for a full hearing before his right to drive on the public roads actually terminates, and he must be given adequate notice of this opportunity. An investigative interview will not satisfy the requirement of a hearing. The licensee must be apprised of the charge against him and confronted with the evidence which supports it.

Additionally, in emergency situations, *Bell v. Burson, supra,* recognized that summary suspension may be appropriate. In view of the state's compelling interest in highway safety, an appropriate official of the Department of Public Safety may temporarily suspend a license without hearing if he has probable cause to believe that the driver presents an immediate threat to the lives of motorists and pedestrians, as more fully set forth in our opinion of contemporaneous date in *Smith v. McGriff,* 434 F.Supp. 673 (D.C.Ala.1977).

In their prayer for relief, plaintiffs ask the Court to enjoin defendants from interrogating licensees without warning them of the possible consequences. Elaborate procedural due process safeguards are not necessary in a civil investigation, as opposed to an adjudicative hearing. *Genuine Parts Co. v. F.T.C.,* 445 F.2d 1382 (5th Cir. 1971). Thus that portion of the requested relief is not appropriate in this case.

An order will be entered accordingly.

---

**11.** This includes suspensions for medical and mental incompetency to drive.