UNITED STATES of America, Plaintiff,

v.

ARTICLES OF DRUG ... WANS, etc., Defendants.

Civ. No. 80–2112.

United States District Court, D. Puerto Rico.

March 28, 1981.

On Motion For Reconsideration July 13, 1981.

Raymond L. Acosta, U. S. Atty., Hato Rey, P. R., for the U. S.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This is a civil *in rem* seizure action arising under the Federal Food, Drug, and Cosmet-

ic Act ("Act"), 21 U.S.C. 301 et seq. The complaint alleges that the articles proceeded against, WANS suppositories and their components, are "new drugs" within the meaning of 21 U.S.C. 321(p), which may not be introduced or delivered for introduction into interstate commerce under 21 U.S.C. 355(a), since they have not been approved for marketing pursuant to 21 U.S.C. 355(b). The complaint also alleges that the seized articles are misbranded, while held for sale after shipment in interstate commerce, within the meaning of 21 U.S.C. 352(f)(1), in that their labeling fails to bear adequate directions for use.[1]

Upon the filing of the complaint, the Clerk of the Court issued a Warrant of Arrest, as required by Rule C(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure ("Supplemental Rules"). Pursuant to the Warrant of Arrest, the United States Marshal seized the articles named in the complaint. Subsequently, Alcon Laboratories (Puerto Rico, Inc.) ("Alcon") filed a claim to the seized articles as provided for by Rule C(6) of the Supplemental Rules.

Alcon has moved to dismiss the complaint. For the reasons discussed below, the motion is denied.

■ Alcon first contends that the procedure used to seize the drugs violated its Fifth Amendment due process right and its Fourth Amendment right to be free from unreasonable seizures. Specifically, Alcon complains about the lack of any judicial scrutiny prior to the filing of the complaint and contends that before a warrant for arrest can issue, a judge is required to ascertain *ex parte* that the seizure is lawful and that it does not constitute an abuse of prosecutorial discretion. This Court has considered Alcon's arguments and has concluded that they are without merit.

Seizures under the Act are required to be accomplished according to the procedure in admiralty. 21 U.S.C. 334(b). Rule C(3),

---

1. The WANS products are also the subject of consolidated seizure and injunction actions previously filed in this Court. *United States v.*

*Alcon Laboratories (Puerto Rico, Inc.),* 636 F.2d 876 (1 Cir., 1980).

Supplemental Rules, provides that "(u)pon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the Marshal for service." [2] Although the seizure provisions of the Act and Rule C do not provide for any pre-seizure judicial inquiry, they consistently have been upheld and recognized as in accord with the due process clause of the Fifth Amendment. See e. g., *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 612, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 263 n. 10, 90 S.Ct. 1011, 1018 n. 10, 25 L.Ed.2d 287 (1970); *United States v. Olsen*, 161 F.2d 669, 671 n. 9 (9 Cir., 1947), cert. denied, 332 U.S. 768, 68 S.Ct. 79, 92 L.Ed. 353 (1947); *Cf., Abbott Laboratories v. Gardner*, 387 U.S. 136, 147, 87 S.Ct. 1507, 1514, 18 L.Ed.2d 681 (1967); *Natick Paperboard Corp. v. Weinberger*, 498 F.2d 125, 127 (1 Cir., 1974); *United States v. Articles of Hazardous Substance ... Troxler Hosiery Co.*, 588 F.2d 39, 42–43 (4 Cir., 1978).

In *Ewing v. Mytinger & Casselberry, Inc.*, supra, the Supreme Court held that seizure proceedings under the Act and the rules of admiralty do not violate the due process clause of the Fifth Amendment. The Court specifically recognized that:

"The harm to property and business can ... be incalculable by the mere institution of proceedings. *Yet, it has never been held that the hand of government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit in the courts.* Discretion of any official may be abused. *Yet, it is not a requirement of due process that there be judicial inquiry before discretion can be exercised.* It is sufficient, where only property

rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." (Citations omitted; emphasis supplied.) 339 U.S. at 599, 70 S.Ct. at 873.

An identical constitutional challenge was made to the seizure provision of the Federal Hazardous Substances Act, 15 U.S.C. 1261 et seq., in *United States v. Articles of Hazardous Substance ... Troxler Hosiery Co.*, supra. That statute's seizure provision is modeled after 21 U.S.C. 334(a). 588 F.2d at 42. In rejecting the challenge, the Fourth Circuit concluded that the Supreme Court's holding in *Ewing* was controlling. *Id.* at 43.

The Court of Appeals for this Circuit in *Natick Paperboard Corp. v. Weinberger, supra*, relied on the Supreme Court's decision in *Ewing* to hold that a court does not even have jurisdiction to prohibit seizure while it determines whether an article is subject to the Act. While the Court of Alpeals did rule in that case that a court could, in circumstances not present here, consider a request for declaratory relief, the Court was careful to emphasize that:

"... we want to make clear that the existence of this limited jurisdiction (to consider a request for declaratory relief) *does not permit the district court to halt in any way the seizure of ... (food)* while the definitional issue is being resolved. We think the latter conclusion is compelled by *Ewing* and the purpose of Section 334." (Emphasis supplied.) 498 F.2d at 129.

In view of this ruling by the Court of Appeals for this Circuit, the position urged by Alcon would result in a meaningless exercise for the Court. The Court would not have jurisdiction to prohibit the institution of seizure under the Act even if the Court in a pre-seizure "review" were to find that the action might involve an abuse of discretion or was not supported by the stat-

**2.** Pursuant to its rulemaking power, the Supreme Court adopted the Supplemental Rules in 1966 and unified them with the Federal Rules of Civil Procedure. The former admiralty rules, which were rescinded upon unifica-

tion, had been in effect since 1921. It has been held that the adoption by the Supreme Court of the rules creates a strong presumption of their constitutionality. See *HFG Co. v. Pioneer Publishing Co.*, 162 F.2d 536, 539 (7 Cir., 1947).

ute. A court properly should decline to reach such an illogical result.

In support of its position, Alcon relies on recent Supreme Court cases which deal with private seizures under state law. *Fuentes v. Shevin, supra* (writs of replevin); *Mitchell v. W. T. Grant Co., supra* (enforcement of vendor's lien); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment). These cases are not applicable to the issues before the Court because this case involves the institution of enforcement action by the government under express statutory authority accompanied by substantial procedural safeguards.

Seizures under the Act are preceded by careful investigation and extensive, internal F.D.A. review. Only then is a proposed seizure recommended to the United States Attorney for filing. The United States Attorney reviews the action and makes an independent decision whether the action will be filed. See *Ewing v. Mytinger & Casselberry, Inc., supra.* The Supreme Court in *Fuentes* recognized that an opportunity for post-seizure judicial review is sufficient when action is taken by public officials to secure a public rather than private right and when prompt action is necessary. 407 U.S. at 91, 92 S.Ct. at 2000. The Court explicitly identified seizures of misbranded drugs as such an action. *Id.* at 92, n. 27, 92 S.Ct. at 2000, n. 27. Moreover, the Supreme Court in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678–79, 94 S.Ct. 2080, 2089–2090, 40 L.Ed.2d 452 (1974), reaffirmed the holdings in *Fuentes* and *Ewing* that, in limited circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible. In *Calero-Toledo* the Supreme Court upheld a Puerto Rican statute that authorized the seizure, without prior judicial involvement, of vessels used for the transport of illegal narcotics.

Alcon also contends that the Fourth Amendment prohibition against unreasonable searches and seizures requires judicial intervention before the warrant for arrest can issue. The Court of Appeals for the Fourth Circuit squarely rejected that proposition in *United States v. Articles of Hazardous Substance . . . Troxler Hosiery Co., supra.* The *Troxler* court held that compliance with the statute and Rule C of the Supplemental Rules was sufficient to satisfy the Fourth Amendment. In so holding, the court relied on *Founding Church of Scientology v. United States,* 409 F.2d 1146, 1150 (D.C.Cir., 1969), cert. denied 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969):

> "(t)hough warrants are generally necessary for arrests of persons and for searches, the warrant requirement has not traditionally been imposed upon seizures of the type involved in this case— attachment of property in the course of civil proceedings. This does not mean that the Fourth Amendment does not apply to such seizures, in both its substantive prohibition against unreasonable seizures and its procedural requirement of judicial or quasi-judicial review of the decision to seize. It means merely that judicial restraint is imposed through a different form of proceeding than the showing of probable cause before a magistrate. In the case of ordinary civil attachments, the details of such proceedings are, even in the federal courts, left to state law. In cases in admiralty, the process is governed by the Admiralty Rules, later recodified as a supplement to the Civil Rules." (Footnotes omitted)

The Fourth Circuit's reasoning is persuasive and supports the same result in this case. Here, the issuance of the warrant of arrest and the subsequent execution of the warrant fully complied with the procedure of Supplemental Rule C. The Court holds that compliance with the requirements of Supplemental Rule C is sufficient to satisfy the Fourth Amendment.[3]

---

**3.** Alcon's Fourth Amendment contention is devoid of any relevant judicial support, as the cases on which it relies are inapposite because they principally deal with *searches* and not

seizures. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), concerned a warrant for a *search* to secure evidence for use in a *criminal* prosecution. *Ca-*

■ As an independent group in support of its motion to dismiss the complaint, Alcon contends that the seizure of the WANS products at the place of their manufacture does not provide a sufficient nexus with interstate commerce to justify their seizure as unapproved "new drugs". This contention is based on the statutory provisions that "(n)o person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) is effective with respect to such drug", 21 U.S.C. 355(a), and that "(drugs) which may not under the provisions of (21 U.S.C. 355), be introduced into interstate commerce, shall be liable to be proceeded against *while in interstate commerce*, or at any time thereafter . . .". (emphasis supplied) 21 U.S.C. 334(a)(1). According to Alcon's contention, these statutory provisions do not authorize the seizure of articles as "new drugs" that are "in interstate commerce" unless these articles themselves have been actually shipped or delivered for interstate shipment. Such a reading of the statutory terms is too literal and too narrow.

Adulterated or misbranded articles can be seized while, *inter alia*, "held for sale . . . after shipment in interstate commerce". 21 U.S.C. 334(a)(1). Several courts have ruled that the "shipment in interstate commerce" requirement is satisfied if the components

of articles at issue have traveled in interstate commerce, there is no requirement that the articles themselves as finished products have crossed state lines. *United States v. Dianovin Pharmaceuticals, Inc.*, 475 F.2d 100, 102–03 (1 Cir. 1973), cert. denied 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65; *United States v. Detroit Vital Foods, Inc.*, 330 F.2d 78 (6 Cir., 1964), cert. denied 379 U.S. 832, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964); *United States v. Cassaro, Inc.*, 443 F.2d 153 (1 Cir., 1971).

Unapproved new drugs can be seized "while in interstate commerce, or at any time thereafter . . .". 21 U.S.C. 334(a)(1). When compared with the seizure provisions for misbranded or adulterated articles, an analogous result should obtain for unapproved new drugs. A drug should be deemed to be "in interstate commerce" at its point of manufacture if one of its components previously traveled in interstate commerce, and if the finished drug itself is destined in the ordinary course of business for interstate distribution. Here, it is undisputed that ingredients of the WANS products traveled in interstate commerce,[4] and that the WANS products were manufactured in the usual course of Alcon's business and were intended for interstate distribution. That is sufficient to invoke the Act's jurisdiction.[5]

mara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), dealt with *searches of private homes* to determine compliance with building code requirements. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), involved the reasonableness of "stop and frisk" search procedures. To the extent that these cases require a balancing between private and public interests in order to determine the permissible extent of a government intrusion, see, *e. g., Terry v. Ohio, supra*, at 21, 88 S.Ct. at 1879, that balancing has already been accomplished in the promulgation of the Supplemental Rules, see note 2, *supra*, and the enactment of 21 U.S.C. 334(a).

Even if this Court were required to conduct an independent review, it would reach the same conclusion. In assessing Alcon's Fourth Amendment interest, the following factors are relevant: the seizure occurred in Alcon's manufacturing plant; there is no dispute that the drugs were to be shipped in interstate commerce for the treatment of members of the

public; and the drugs are subject to governmental health and safety regulation. When these factors are considered in light of the fact that commercial areas, even though not accessible to members of the public, entail privacy interests less substantial than the privacy of one's home, *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977), the limited intrusion contemplated by the Act and Supplemental Rule C cannot be said to be unreasonable.

4. In fact, the active ingredients of the WANS products were shipped to Alcon in interstate commerce.

5. The Court of Appeals for the Third Circuit referred in dictum to a position that is inconsistent with the Court's holding in this case. *United States v. Articles of Drug (Lannett Co.)*, 585 F.2d 575, 585 (3 Cir., 1978). However, the jurisdictional basis for the seizure in that case rested solely on the allegation that the drugs

This Court's reading of the statute is consistent with the direction of the Supreme Court that the "Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health". *United States v. An Article of Drug ... Bacto-Unidisk*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). Alcon's contention that the WANS products were not subject to seizure as unapproved new drugs merely because they had not been shipped from the plant were they had been manufactured into finished drug products to a place outside Puerto Rico, would require the government to attempt to track individual shipments and effect seizure before the products are used. Such a restrictive reading would not be consistent with the Supreme Court's direction. Further, it would conflict with established law defining "interstate commerce" so as to reach the type of conduct at issue here. See *e. g., Board of Trade of City of Chicago v. Olsen*, 262 U.S. 1, 33–34, 43 S.Ct. 470, 476, 67 L.Ed. 839 (1923); *Merchants Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042, 1044 (5 Cir., 1972).

In view of the Court's holding that the WANS products are subject to seizure on the basis of the allegation that they are unapproved new drugs, it is unnecessary to consider Alcon's argument that the seizure in this case would violate the limitation on multiple seizures under 21 U.S.C. 334(a)(1) if the Court's jurisdiction depended exclusively upon the allegation of misbranding under 21 U.S.C. 352(f)(1).[6]

were misbranded under 21 U.S.C. 352(f)(1). See 585 F.2d 579. The *Lannett* opinion is therefore not relevant to this case.

6. The consolidated actions referred to in note 1, *supra*, include pending seizure actions in which the WANS products are alleged to be misbranded under 21 U.S.C. 352(f)(1).

1. It was the practice of the United States to seize unapproved new drugs on the basis of their failure to bear adequate direction to use, 21 U.S.C. 352(f)(1), while held for sale after shipment in interstate commerce. After a district court's decision, these drugs could not be seized at their point of manufacture on the

WHEREFORE, in view of the foregoing, it is hereby ORDERED that claimant's motion to dismiss the libel of condemnation, is DENIED.

IT IS SO ORDERED.

### OPINION AND ORDER

#### On Motion for Reconsideration

Present before the Court is a motion filed by defendant Alcon Laboratories, Inc. (hereinafter referred to as Alcon), on March 31, 1981, wherein it moves this Court to reconsider its Opinion and Order filed on March 18, 1981. Plaintiff filed its opposition to said motion on April 28, 1981. In said order this Court dismissed defendant's Motion to Dismiss Libel of Condemnation and held that an unapproved new drug can be seized "at its point of manufacture if one of its components previously traveled in interstate commerce and if the finished drug itself is destined in the ordinary course of business for interstate distribution." (Opinion and Order, page 707).

Alcon first alleges reconsideration on two grounds:

1) that this Court's holding on this issue is inconsistent with the Food and Drug Administration's (hereinafter FDA) previous contemporaneous and long-standing construction of the Federal Food, Drug and Cosmetic Act (FFDCA)[1] and proceeded to cite several cases[2] in support of its position, and

2) that the FFDCA provides one jurisdictional basis for seizure based upon a new drug charge and another jurisdictional basis

basis of an allegation of misbranding. The United States has based such seizure actions on unapproved new drug allegations, as well as on misbranding allegations. See: *U. S. v. X-Otag Plus Tablets*, 441 F.Supp. 105 (D.Colo., 1977), aff'd 602 F.2d 1387 (10 Cir., 1979).

2. *U. S. v. Articles of Drug (SUL–U)*, 625 F.2d 665, 671 (5 Cir., 1978); *U. S. v. 40 cases more or less*, 289 F.2d 343 (2 Cir., 1961), cert. denied 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961); *U. S. v. Phelps Dodge Mercantile Co.*, 157 F.2d 453 (9 Cir., 1946), cert. denied 330 U.S. 818, 67 S.Ct. 675, 91 L.Ed. 1270 (1947).

for a seizure based upon misbranding charge.

Defendant's arguments are without merit. Both arguments are presented without discussion or analysis on how the cases are applicable, nor add anything new to move this Court to reconsider its Opinion and Order of March 18, 1981. Furthermore, the cases cited by defendant are not relevant to this case since the basis for the seizure in those cases rested only on the allegation that the drugs were misbranded and not as an unapproved new drug like in the present case.

Also in our Opinion and Order, we held that neither the Fourth nor the Fifth Amendments require any judicial scrutiny prior to the issuance of a warrant for arrest *in rem* under the FFDCA. Alcon contends as to this issue that even if a court cannot prohibit the institution of a seizure, it could nevertheless refuse to issue a warrant that is statutorily or constitutionally improper. This argument is also without merit.

It is settled that when the FDA believes that a drug is a new drug and is being marketed without approval of a New Drug Application, (NDA), said agency is empowered to institute seizures and injunctive actions in federal district courts to remedy the alleged violation of the Act. 21 U.S.C. 332, 334. Also, it has been held in *U. S. v. Alcon Laboratories*, 636 F.2d 876, 882 (1 Cir., 1981), that the Rule of *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) is still controlling in that the district court lacks jurisdiction to enjoin multiple seizure actions instituted by the FDA under the Act. In the *Alcon* case the First Circuit Court stated:

"We see no distinction between this case and *Ewing* merely because the latter involved multiple seizures for alleged misbranding, which may be instituted only when there is probable cause to believe that the article is dangerous or that the misbranding may be fraudulent or misleading. Risks to consumers may be present in new drug cases and the same section of the Act involved. 21 U.S.C. 334(a)(1). The Supreme Court's decision in *Ewing* precludes judicial interference with the FDA's decision to institute enforcement actions, whatever the precise context."

Also, for practical reasons, if a district court could not enjoin seizure of drugs, the public would be denied the speedy protection intended by Congress of providing a rapid and efficient method to remove misbranded, adulterated or a new drug from the market at once. *Pharmadyne Laboratories, Inc. v. Kennedy*, 596 F.2d 568 (3 Cir., 1979).

Although defendants also submitted for this Court's consideration the Opinion of *U. S. v. An Article of Device Theramatic*, 641 F.2d 1289 (9 Cir., 1981), as to the above-mentioned issue, the holding of that case does not apply to the seizure in this case. That case held that absent exigent circumstances the United States must obtain a warrant of arrest issued by a Magistrate after a showing of probable cause under the Fourth Amendment before it can seize articles alleged to violate the Act (FDA) from any homes or offices. After examining the *Theramatic* opinion, we found that the Ninth Circuit Court's decision is explicitly limited to the specific factual circumstances of that case. The seizure in the *Theramatic* case was accomplished through the entrance to a physician's office where the device to be seized sat on the doctor's office for more than six years. Thus, in view that the specific factual setting involved in that case is not present in the present action, we still reaffirm our Opinion and Order of March 18, 1981.

Alcon also argues that it would be a meaningless, economically and judicially wasteful exercise for the Court to allow a seizure and proceed to trial and then, based upon the identical facts and law which were before the Court at the time of the seizure, dismiss the case. Even if the Court were to agree with Alcon, the statute's language is clear and it cannot be substituted by a different procedure since the District Court, as previously mentioned, is precluded from interference with the FDA's decision to in-

stitute seizure and injunction actions in whatever the precise context. *Ewing v. Mytinger & Casselberry, Inc., supra; U. S. v. Alcon Laboratories, supra.*

Moreover, when it comes to protect public health against a potential injury from a drug, there is no such thing as a meaningless and wasteful judicial exercise of this Court's time. On the contrary, such a proceeding should take place on behalf of public interest to insure consumer safety.

WHEREFORE, in view of the foregoing, the Court ORDERS that defendant's motion for reconsideration filed on March 31, 1981, be and it is hereby DENIED.

IT IS SO ORDERED.