## IN THE MATTER OF HARRELLA H. GOODWIN, Plaintiff
### v.
## ST. CLAIR GOODWIN, Defendant

Family No. F53/1987

Territorial Court of the Virgin Islands

Div. of St. Croix

December 11, 1987

---

81

■■■■■

■■■■■

■■■■■

■■■■■

DIANE TRACE WARLICK, ESQ. (LAW OFFICE OF R. ERIC MOORE), St. Croix, V.I., *for plaintiff*

MICHAEL A. JOSEPH, ESQ., St. Croix, V.I., *for defendant*

FINCH, *Judge*

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on a motion to dissolve a temporary restraining order entered against defendant on March 25, 1987. The Court is called upon to decide two primary issues: 1) whether the order violates 16 V.I.C. § 98 and/or Fed. R. Civ. P. Rule 65; and 2) whether 16 V.I.C. § 98 violates the Fourth, Sixth and Fourteenth Amendments of the United States Constitution. For the reasons mentioned below, this Court concludes that the temporary restraining order is not statutorily defective, and that 16 V.I.C § 98 is not constitutionally infirm. Accordingly, the motion to dissolve will be denied.

### II. FACTS

Plaintiff, Harella Goodwin, and defendant, St. Clair Goodwin, are married and reside at No. 458 Estate Mon Bijou, St. Croix, with their two minor children. On March 25, 1987, Mrs. Goodwin filed a domestic violence complaint against Mr. Goodwin, seeking temporary relief pursuant to 16 V.I.C. § 98. She alleged that she had been the victim of physical abuse, specifically, assault and burglary, perpetrated by Mr. Goodwin. Pursuant to her complaint, this Court entered a temporary restraining order (TRO) on March 25, 1987, prohibiting Mr. Goodwin from: 1) subjecting Mrs. Goodwin to further domestic violence, 2) having any contact with her, and 3) entering the residence of the parties.

A copy of the TRO was served on Mr. Goodwin on March 25, 1987. The order provided that it would remain in effect for ten days, and that upon twenty-four hours' notice to Mrs. Goodwin, Mr. Goodwin could move to dissolve or modify it. A hearing on a permanent injunction was set for April 6, 1987, however, it was postponed to May 4, 1987. The TRO was thus extended to that date also. On April 2, 1987, Mr. Goodwin filed a motion to modify the TRO. This was granted. Consequently, on April 3, he was permitted to enter his home for a brief period to retrieve some personal belongings.

On April 1, 1987, Mr. Goodwin filed the motion sub judice to dissolve the TRO alleging that it is statutorily defective, and that 16 V.I.C. § 98 is unconstitutional. After hearing, the motion was taken under advisement.

## III. DISCUSSION

Mr. Goodwin launches two separate attacks in attempt to obtain a dissolution of the temporary restraining order (TRO) entered against him on March 25, 1987. First, he contends that the TRO was not entered in compliance with the requirements of 16 V.I.C. § 98 nor Fed. R. Civ. P. Rule 65. Second, he argues that 16 V.I.C. § 98 runs afoul of the Sixth Amendment right to counsel, the Fourth Amendment right to privacy, and the Fourteenth Amendment Due Process and Equal Protection Clauses. These issues will be discussed separately.

A) *Statutory Violations*

1) *16 V.I.C. § 98*

■■ Mr. Goodwin contends that the TRO was granted upon insufficient evidence that dire emergency conditions existed. This Court disagrees. 16 V.I.C. § 98(a) authorizes the issuance of ex parte relief only in situations where dire emergency conditions exist. The standard for such relief is outlined in subsection 16 V.I.C. 98(b) of the same title. Under that section, a Family Court Judge may issue a TRO "upon good cause shown, when necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought." Cited supra. The statute is remedial in nature, and this Court will thus construe it liberally. Mrs. Goodwin alleged in her complaint that Mr. Goodwin: 1) committed an assault upon her; 2) abused her several times during their marriage, some of which were reported to the police, 3) threatened to destroy her reputation,

84

and 4) grabbed and physically abused her on March 25, 1987. This Court finds that these allegations constitute good cause for the entry of an ex parte order, and that such an order was necessary to protect her health and well-being. Therefore, the TRO entered against Mr. Goodwin is in accordance with the provisions of 16 V.I.C. § 98.

2) *Fed. R. Civ. P. Rule 65*

Mr. Goodwin further contends that the TRO violated Rule 65 of the Federal Rules of Civil Procedure. Specifically, he argues that there was: 1) no showing of irreparable harm, and, 2) no certification of efforts to notify Mr. Goodwin. Defendant's application of Rule 65 is entirely misguided.

There is an express provision in Virgin Islands law for the issuance of TRO's with respect to domestic violence, i.e., 16 V.I.C. § 98. Further, the two requirements mentioned above are not applicable to the legal process in cases of domestic violence. Accordingly, this Court holds that Fed. R. Civ. P. Rule 65 is inapplicable to temporary restraining orders issued pursuant to 16 V.I.C. § 98. 5 App. IV. R. 7; and Investigations Unlimited v. All American Holding Corp., 16 V.I. 524, 525 (Terr. Ct. 1979).

In addition, 16 V.I.C. § 98 specifically governs the issuance of TRO's relative to domestic violence. It would therefore control over the more general Rule 65. Busic v. United States, 100 S.Ct. 1747, 1753 (1980). The TRO is thus not statutorily defective because the requirements of Rule 65 are of no moment here.

B) *Constitutional Violations*

1) *Right to Counsel*

Mr. Goodwin asserts that 16 V.I.C. § 98 violates the Sixth Amendment to the United States Constitution by permitting this Court to find that a crime (i.e., assault and battery) was committed without his having counsel present. This argument is untenable.

Emergency relief is not based on a finding that a crime was committed. Such relief is entered upon a showing of good cause, and when necessary to protect the victim's life, health or well-being. 16 V.I.C. § 98. The determination of whether domestic violence has occurred is made at a hearing set within ten days of the entry of the TRO. 16 V.I.C. § 97(a). This, however, is not a determination that the defendant has committed a crime, for no criminal sanctions are imposed. The Court merely determines whether the defendant

committed any of the acts which constitute "domestic violence", i.e., assault and battery, burglary, etc. See 16 V.I.C. § 91(b). If so, relief, civil in nature, is entered in accordance with 16 V.I.C. § 97(b). The Court never determines pursuant to a domestic violence complaint, whether a criminal offense was committed. Concededly, a defendant may be charged with a *crime* involving domestic violence. 16 V.I.C. § 99 (permitting the arrest of a perpetrator of domestic violence, and his/her incarceration upon conviction). However, such is not the case here.

■■ It is well settled that the Sixth Amendment right to counsel is triggered only where "judicial proceedings have been initiated against an accused 'whether by way of formal charge, preliminary hearing, indictment, information or arraignment'." Brewer v. Williams, 97 S.Ct. 1232, 1239 (1977), citing Kirby v. Illinois, 92 S.Ct. at 1882 (1972). No such proceedings have been initiated against Mr. Goodwin. His argument thus crumbles because it stands upon an erroneous premise. Accordingly, 16 V.I.C. § 98 does not violate Mr. Goodwin's Sixth Amendment rights.

2) *Right to Privacy*

Mr. Goodwin's next contention is that 16 V.I.C. § 98 violates the Fourth Amendment by permitting this Court to "seize" his home without probable cause. This contention is based on the premise that the prohibition against Mr. Goodwin's entering his home, pursuant to the TRO, constitutes a "seizure," thereby triggering the need for probable cause. His reliance, however, on the Fourth Amendment is misplaced.

The Fourth Amendment to the United States Constitution states:

> The right of people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The amendment has been construed as complimentary to the Fifth Amendment right against self-incrimination. Mapp v. Ohio, 81 S.Ct. 1684, 1687 (1961). Both amendments have, over the years, been applied only in the context of seized testimony, documents, or objects, for use as evidence at a trial. The Supreme Court has held that these amendments apply to "any forcible and compulsory extortion of a man's own testimony or of his private papers to be

used as evidence to convict him of a crime or to forfeit his goods."
Mapp, supra, at 1687, citing Boyd v. United States, 6 S.Ct. at 535
(1886). In order to protect a person's Fourth Amendment rights,
the courts have created a rule of evidence known as the exclusion-
ary rule. As the Supreme Court has stated,

> The striking outcome of the Weeks case and those which have
> followed it was the sweeping declaration that the Fourth
> Amendment, although not referring to or limiting the use of
> evidence in court, really forbade its introduction if obtained by
> government officers through a violation of the amendment.

Mapp, supra, at 1688, citing Olmstead v. United States, 48 S.Ct.
564, at 567 (1928).

In the instant case, nothing was seized as evidence for use at trial.
The TRO entered against Mr. Goodwin, barring him from entering
his home, was a statutorily authorized remedy granted by the
Court. His belongings were not seized by officers to convict him
of a crime. Thus the Fourth Amendment is not triggered.

■ Further, the Supreme Court "has established that the 'prime
purpose' of the exclusionary rule, if not the sole one, is to deter
future unlawful police conduct." United States v. Janis, 96 S.Ct.
3021, 3028 (1976), citing United States v. Calandra, 94 S.Ct. at 619
(1974).

> Thus, in sum, the rule is a judicially created remedy designed
> to safeguard Fourth Amendment rights generally through its
> deterrent effect, *rather than a personal constitutional right of*
> *the party aggrieved.* And, "as with any remedial device, *the*
> *application of the rule has been restricted to those areas where*
> *its remedial objectives are thought most efficaciously served."*
> (Emphasis supplied.)

Janis, supra, at 3028, citing Calandra, supra, at 620. It is clear that
the exclusionary rule cannot be applied to this case so as to
effectuate its purpose. There is no unlawful police conduct to deter.
Accordingly, this Court holds that the Fourth Amendment is
inapplicable to the TRO entered against Mr. Goodwin, barring him
from entering his home.

3) *Equal Protection*

Mr. Goodwin's next attempt to invalidate § 98 is an assertion that
it runs afoul of the Equal Protection Clause of the Fourteenth
Amendment. Specifically, he makes three arguments: a) Pursuant

to § 92, a victim of domestic violence is notified of his/her rights to request temporary relief. However, a defendant is not advised of his right to move for dissolution of the order pursuant to § 98(d). Also, a defendant is not advised of his right to counsel; b) No notice to a defendant is required prior to the issuance of a TRO. But notice to a victim is required prior to the granting of a dissolution or modification; and c) Pursuant to § 96(d), the Court assists a victim in completing necessary forms. However, no such assistance is available to a defendant who wishes to dissolve a TRO. This Court will discuss each argument in turn.

(a) *Advise of rights*

■ 16 V.I.C. § 92 requires a police officer to notify a victim, before leaving the scene of an act of domestic violence, of certain rights. Nothing in the facts of this case indicates that such advice was given to Mrs. Goodwin. Thus Mr. Goodwin has no standing to argue that a victim but not an attacker is advised of his/her rights under the Domestic Violence Statute.

■ However, even if he had standing, his argument is without merit. An attacker is advised of his right to move for dissolution of a TRO. In fact, the TRO entered against Mr. Goodwin specifically provided that: "Defendant may, upon twenty-four (24) hours notice to petitioner, appear before the Family Court and move to dissolve or modify this Order, . . . ." See Order dated March 25, 1987. A copy of this order was served on Mr. Goodwin, via his secretary, on March 25, 1987. Therefore, he was advised of his rights.

■ It is true that Mr. Goodwin was not advised of his right to counsel. However, this assertion means nothing because there is no law which requires that he be so advised under the circumstances herein. There are no criminal proceedings against Mr. Goodwin. He was not in custody, nor was he even interrogated. Accordingly, he was not entitled to be advised of any right to counsel. See, United States v. Milto, 714 F.2d 294, 296 (3rd Cir. 1983), cert. denied 104 S.Ct. 550; and Rhode Island v. Innis, 100 S.Ct. 1682, 1689 (1980).

(b) *Notice to victim but not attacker*

■ ■ Mr. Goodwin correctly asserts that victims of domestic violence are treated differently to their attackers with respect to notice. A victim may obtain a TRO without giving notice of her complaint to her attacker. On the other hand, an attacker is

required to give his/her victim notice of a motion for dissolution or modification of a TRO. However, the mere fact of different treatment does not ipso facto establish a violation of equal protection. Cal. Ass'n. of Physically Handicapped v. F.C.C., 721 F.2d 667, 670 (9th Cir. 1983). "The Equal Protection Clause only guarantees like treatment to persons similarly situated." Desris v. City of Kenosha, Wis., 687 F.2d 1117, 1119 (7th Cir. 1982); see also City of Cleburne, Tex. v. Cleburne Living Center, 105 S.Ct. 3249, 3254 (1985). A victim of domestic violence endures pain, is apprehensive, and is in need of protection. An attacker inflicts pain and causes harm. Clearly, these two classes of persons are not similarly situated. Therefore, the Constitution does not require that they be treated similarly.

However, even if victims and attackers were similarly situated, the classification would nevertheless be valid. The classification here involves no suspect class nor impinges upon any fundamental right. Thus its legitimacy is determined by the rational basis test. Hanhn v. United States, 757 F.2d 581, 593 (3rd Cir. 1985); and Olgaves v. Russoniello, 770 F.2d 791, 802 (9th Cir. 1985). Under this test, which is highly deferential, the "challenged legislation will be upheld unless a plaintiff can demonstrate that the classification at issue does not bear a rational relationship to a legitimate state interest." Price v. Cohen, 715 F.2d 87, 94 (3rd Cir. 1983). This standard "reflects the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one . . . . Such action by a legislation is presumed to be valid." Massachusetts Bd. of Retirement v. Murgia, 96 S.Ct. 2562, 2567 (1976).

 The legislative purpose of the Virgin Islands Domestic Violence Statute is to aid and protect victims of domestic violence by providing them with effective remedies. Act No. 5013, sec. 9, October 18, 1984. To require a victim to give his/her attacker notice of a request for a TRO would severely retard the receipt of such relief. The goal of § 98 is to give a victim immediate relief when necessary to protect the victim's life, health or well-being. This Court thus concludes that: 1) The purpose of the statute is legitimate; and 2) It was reasonable for the legislature to believe that the statute would promote its purpose. W. & S. Life Ins. Co. v. State Bd. of Equalization, 101 S.Ct. 2070, 2083 (1981). Accordingly, the classification here is valid under the rational basis test.

89

(c) *Assistance in preparation of forms*

 Mr. Goodwin also asserts that the statute makes available to a victim, assistance in the preparation of complaint forms. However, no such assistance is available to an attacker who desires to move for dissolution or modification of a TRO. This difference in treatment is so insignificant that it cannot seriously be considered as a challenge to the validity of the statute. Nevertheless, this Court finds that the differing treatment asserted fosters the purpose of statute and thus is not a violation of equal protection.

4) *Due Process*

 Finally, Mr. Goodwin asserts that § 98 violates the Due Process Clause of the Fourteenth Amendment because it fails to provide for notice and a hearing prior to depriving him of food, clothing, and shelter. Concededly, the statute permits the entry of an ex parte order restraining a defendant from entering his home. 16 V.I.C. § 98. A hearing is then scheduled within ten days thereafter. 16 V.I.C. § 97. The TRO remains in effect for ten days. However, the defendant may move for its dissolution or modification upon 24 hours' notice to the plaintiff. 16 V.I.C. § 98. The TRO entered against Mr. Goodwin, pursuant to § 98, constituted a deprivation of his home, which is a property interest embodied within the Fourteenth Amendment. Fuentes v. Shevin, 92 S.Ct. 1983, 1996 (1972). The question then is what process is due.

 Once there has been a deprivation of life, liberty, or property, due process requires, at a minimum, that there be notice and an opportunity for a hearing. Goss v. Lopez, 95 S.Ct. 729, 738 (1975); Matthews v. Eldridge, 96 S.Ct. 893, 902 (1976); and Shevin, supra, at 1994. "It is fundamental that the right to notice and an opportunity for a hearing is to be given at a meaningful time and in a meaningful manner." Shevin, supra, at 1994; Eldridge, supra, at 902. A hearing is in fact granted prior to the issuance of a permanent injunction depriving a defendant from the use of his home. 16 V.I.C. § 97. Mr. Goodwin does not challenge the manner of this hearing. Rather, he argues that it is not granted at a meaningful time. The primary issue, then, is whether procedural due process in the context of this case requires notice and a hearing prior to the initial deprivation of Mr. Goodwin's property interest effected by the TRO. This Court thinks not.

Due process is a flexible concept, and its procedural protections vary with the demands of the particular situation. Eldridge, supra, at 902. The requirement of a hearing at a meaningful time and in a meaningful manner "does not mean that a pre-deprivation evidentiary hearing must always be held." Needleman v. Bohlen, 602 F.2d 1, 5 (1st Cir. 1979). Although notice and a hearing are normally required, the hearing may be postponed in "extraordinary situations." Shevin, supra, at 1999; Breath v. Cronvich, 729 F.2d 1006, 1010 (5th Cir. 1984); Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570 (3rd Cir. 1985); see also Phillips v. Commissioner of Internal Revenue, 51 S.Ct. 608 (1931) (summary seizure of property to collect United States internal revenue allowed); and Ewing v. Mytinger & Carselberry, Inc., 70 S.Ct. 870 (1950) (summary seizure of property allowed to protect the public from misbranded drugs). The Supreme Court has allowed outright seizures without an opportunity for a prior hearing in a few limited situations, only where the following existed:

1) The deprivation has been directly necessary to secure an important governmental or general public interest;

2) There has been a special need for very prompt action; and

3) The state has kept strict control over its monopoly of legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

Shevin, supra, at 2000. All of these requirements are satisfied here.

▆▆ As stated earlier, the purpose of the Domestic Violence Statute is to aid and protect victims of domestic violence. The Supreme Court has recognized aims to protect the public from misbranded drugs and to collect taxes as important governmental interests. See Phillips, supra; and Ewing, supra. This Court thus concludes that the aim of the Virgin Islands Domestic Violence Statute to aid and protect domestic violence victims is an important governmental and general public interest. The victim of domestic violence is in fear of being subjected to further violence in the home. Thus the deprivation of the perpetrator's home via a TRO is necessary to protect the victim.

91

■ In cases where a victim seeks emergency relief, pursuant to § 98, there is a special need for prompt action. The solution is to remove the perpetrator from the scene of violence immediately. To give the perpetrator notice and opportunity for a hearing prior to restraining him or her from entering the home is to give the perpetrator the opportunity to commit further violence. Such a procedure would wholly defeat the purpose of the statute.

Lastly, the TRO is granted by a governmental official, i.e., a judge, pursuant to a narrowly drawn statute. A restraining order may be entered only "upon good cause shown, when necessary to protect the life, health, or well-being of a victim on whose behalf relief is sought." 16 V.I.C. § 98. It is only in these narrow cases that a judge may find it necessary and justified to issue a TRO. Thus, the statute meets the third prong of the Shevin requirements.

■ The procedure for the issuance of a TRO under § 98 meets all the requirements of Shevin. This Court thus holds that due process does not require notice and a hearing prior to issuance of a TRO under the Virgin Islands Domestic Violence Statute.

## IV. CONCLUSION

Based on the foregoing discussion, this Court holds that the TRO entered in this matter is not statutorily defective, and that the Virgin Islands Domestic Violence Statute is not constitutionally infirm as challenged. Accordingly, the motion to dissolve will be denied.

## ORDER

Based upon the memorandum opinion filed on even date herewith, it is hereby

ORDERED that defendant's motion to dissolve shall be and is hereby DENIED.