**UNITED TRANSPORTATION UNION and O.L. Macks, Plaintiffs-Appellants,**

v.

**Drew LEWIS, Secretary of Transportation, and Robert W. Blanchette, Administrator, Federal Railroad Administration, Defendants-Appellees.**

**No. 81–8020.**

United States Court of Appeals, Eleventh Circuit.

March 11, 1983.

---

Alper, Schoene, Horkan, Lawrence M. Mann, Washington, D.C., for plaintiffs-appellants.

Edward J. Vulevich, Jr., Asst. U.S. Atty., Mobile, Ala., Billie Stultz, Federal R.R. Admin., Washington, D.C., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

This case presents the question whether the emergency powers of the Secretary of Transportation, under the Federal Railroad Safety Act,[1] to abate unsafe conditions or practices involving a hazard of death or injury to persons are exercisable with respect to allegedly hazardous conditions in crew sleeping accommodations under the Hours of Service Act,[2] where the prescriptions of the Hours of Service Act with respect to crew sleeping accommodations are enforceable only by the U.S. attorney.[3] The District Court for the Southern District of Alabama, on the basis of the legislative history of section 432, found that the emergency powers of the Secretary of Transportation are limited to unsafe conditions or practices relative to actual railroad operations and do not apply to crew sleeping quarters. After considering the submissions of the parties and the legislative histories of the relevant statutes, and having heard oral argument, we affirm in part and reverse in part.

I.

The Burlington Northern Railroad provides sleeping quarters to its train crews in Magnolia, Alabama, at the Magnolia Hotel. Section 62(a)(3) of the Hours of Service Act (Service Act)[4] prescribes certain minimum standards for sleeping quarters provided by a railroad to its employees. If a carrier undertakes to provide accommodations to its employees, as Burlington Northern has chosen to do at Magnolia, such accommodations must afford "an opportunity for rest, free from interruption caused by noise under the control of the railroad, in clean, safe, and sanitary quarters."[5] Appellants, United Transportation Union and Macks (collectively referred to as UTU), maintain that conditions at the Magnolia Hotel are deplorable,[6] presenting unnecessary risks of injury, disease, and safety in violation of section 62(a)(3).

Section 64a of the Service Act[7] stipulates that the sleeping quarters provision of sec-

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. 45 U.S.C. § 432 (Supp. IV 1980).

2. 45 U.S.C. § 62(a)(3) (1976).

3. 45 U.S.C. § 64a (1976 & Supp. IV 1980).

4. Section 62 of 45 U.S.C. (1976) provides, in pertinent part:
   "(a) Limitations
   "It shall be unlawful for any common carrier, its officers or agents, subject to this chapter—
   * * * * * *
   "(3) to provide sleeping quarters for employees (including crew quarters, camp or bunk cars, and trailers) which do not afford such employees an opportunity for rest, free from interruptions caused by noise under the control of the railroad, in clean, safe, and sanitary quarters; * * *."

5. 45 U.S.C. § 62(a)(3).

6. Appellants allege that unclean, unsafe, and unsanitary conditions abound at the Magnolia Hotel. The record hardly paints a picture of genteel Southern hospitality. One bathroom serves 22 rooms of this uninsulated concrete block structure. UTU complains of a lack of privacy, defective heating and cooling equipment, and vermin. From its allegedly noisy linoleum-tiled hallways to its precariously poised propane tank and intermittently leaky septic system, the Magnolia Hotel is apparently not the flower of railroad crew quarters.

7. Section 64a(a) of 45 U.S.C. (Supp. IV 1980) provides, in pertinent part:
   "§ 64a. Manner of enforcement of this chapter
   "(a) Penalty; suits therefor; statute of limitations
   "(1) Any common carrier subject to this chapter, or any officer or agent thereof, that requires or permits any employee to go, be, or remain on duty in violation of section 62, sec-

tion 62 can be enforced only by the U.S. attorney. Section 432 of the Federal Railroad Safety Act (Safety Act),[8] however, accords the Secretary of Transportation power to order the abatement of unsafe conditions or practices that create an emergency situation involving a hazard of death or injury to persons.

UTU brought the situation at the Magnolia Hotel to the attention of the Secretary of Transportation. The Secretary investigated UTU's charges [9] and refused either to lodge with the U.S. attorney information that a violation of section 62(a)(3) existed at the Magnolia Hotel or to exercise his emergency powers under section 432.

UTU then filed this action under sections 62(a)(3) and 432, seeking an injunction to compel the Secretary to issue an emergency order under section 432, a declaratory judgment that the Government defendants have violated a mandatory duty to require the carrier to comply with section 62(a)(3), a writ of mandamus, and attorney's fees and costs. The trial court dismissed the complaint on the grounds, first, that section 62(a)(3) can be enforced only by the U.S. attorney, and, second, that the Secretary's power to issue an emergency order under section 432 does not extend to the sleeping quarters provision of section 62(a)(3). UTU appeals only the dismissal of its section 432 claim.

## II.

■ As the trial judge correctly pointed out, UTU cannot enforce the provisions of section 62(a)(3) by this action. Section 64a

---

tion 63, or section 63a of this title, or that violates any other provision of this chapter, shall be liable for a penalty of $500 for each violation, *to be recovered in an action to be brought by the United States attorney in the district court of the United States for the judicial district in which such violation occurred or in which the defendant has its principal executive office. It shall be the duty of the United States attorney to bring such an action upon satisfactory information being lodged with him.* In the case of a violation of section 62(a)(3) or (a)(4) of this title, each day a facility is in noncompliance shall constitute a separate offense." (Emphasis supplied.)

Section 64a(b) of 45 U.S.C. (1976) provides:

"(b) Duty of Secretary of Transportation

"*It shall be the duty of the Secretary of Transportation to lodge with the appropriate United States attorney information of any violation as may come to the knowledge of the Secretary.*" (Emphasis supplied.)

8. Section 432 of 45 U.S.C. (Supp. IV 1980) provides, in pertinent part:

"§ 432. Emergency powers

"(a) Emergency situations; order of Secretary; abatement of situation

"If the Secretary determines, on the basis of testing, inspection, investigation, or research carried out pursuant to this subchapter, that an *unsafe condition or practice, or a combination of unsafe conditions or practices, or both, create an emergency situation involving a hazard of death or injury to persons,* the Secretary may immediately issue an order, without regard to the provisions of section 431(b) of this title, imposing such restrictions or prohibitions as may be necessary to bring about the abatement of such emergency situation.

"(b) Review

"After the issuance of an order under this section, opportunity for review of such order shall be provided in accordance with section 554 of title 5.

\* \* \* \* \* \*

"(e) Judicial relief if Secretary fails to act

"Any employee of a common carrier by railroad engaged in interstate or foreign commerce who may be exposed to imminent physical injury in the course of his employment because of the *Secretary's failure,* without any reasonable basis, *to seek relief* under subsection (a) of this section, or the authorized representative of such an employee, shall have the *right to bring an action against the Secretary in the United States district court for the judicial district in which the emergency situation is alleged to exist* or in which the employer has its principal executive office, or for the District of Columbia, to compel the Secretary to issue an order under this section. The failure of the Secretary to seek relief under subsection (a) of this section shall be reviewed solely under the standards of section 706 of title 5." (Emphasis supplied.)

9. A Federal Railroad Administration investigator conducted a noise level test on the site and interviewed crew members. The investigator's observations on conditions at the Magnolia Hotel parallel somewhat a more ancient observation, spoken at least in half-truth, that "The South ain't what it used to be, and never was." He found "that most of the allegations noted in the complaint were basically true and proposals have been made to remedy most of them," and he concluded that "the hotel was \* \* \* clean, safe, sanitary, the noise level within permissible limits and suitable for lodging [*sic* ]."

provides that penalties for violations of section 62 can be recovered in an action brought by the U.S. attorney.[10] No mechanism for private enforcement of section 62 exists and, based on the clear language of section 64a, no private right of action could be implied.

The trial judge felt that, by bringing this action, UTU had sought to bypass this exclusive enforcement provision and the court, therefore, dismissed UTU's Service Act claim without prejudice. We fully agree with the district court that section 62(a)(3) can be enforced only by the U.S. attorney.

■ Section 64a does, however, provide a mechanism whereby private parties can request official action to redress a section 62(a)(3) violation. The district court directed UTU to lodge with the U.S. attorney satisfactory information that a violation has occurred, yet the statute indicates a different course of action.

■ UTU could have proceeded under section 64a directly against the Secretary. If a violation has occurred, the Secretary can be compelled to inform the U.S. attorney. If the Secretary finds no violation and refuses to lodge with the U.S. attorney complainant's information supporting an alleged violation, the Secretary's decision to withhold administrative action could be reviewed under the Administrative Procedure Act[11] (APA) as administrative action wrongfully withheld.

UTU chose not to pursue that course in this case. Despite that available remedy, UTU seeks in this proceeding to compel the Secretary to exercise his emergency powers. UTU did not appeal the dismissal of its section 62(a)(3) claim. At trial, UTU went so far as to state that section 62(a)(3) was referenced only for purposes of background and did not state a basis for positive relief.

This action, therefore, is appealed *only* under section 432.

We affirm that portion of the district court's judgment disposing of the Service Act claim, and turn now to UTU's section 432 claim.

### III.

■ We find, in light of the legislative history of the 1980 amendments to the Safety Act,[12] practical interpretation of the broad phrase "conditions or practices," the need for flexibility in response to life threatening emergency situations, and the lack of conflict between the exercise of the Secretary's emergency powers and the U.S. attorney's enforcement of the Service Act, that the Secretary of Transportation's emergency powers under section 432 to abate unsafe conditions or practices extend to emergency situations involving a hazard of death or injury to persons with respect to sleeping quarters for employees.

### A.

While the legislative history does not explicitly resolve the issue, Congress does appear to have adopted in the 1980 amendments to section 432 broad language that would encompass emergency situations arising with respect to sleeping quarters. The pre-1980 wording of section 432 addressed facilities or pieces of equipment. In *Louisville & N.R.R. v. Sullivan*,[13] the United States District Court for the District of Columbia held that Congress did not intend to give the Secretary of Transportation emergency power under section 432 to impose speed limits on trains carrying hazardous materials and to inspect tracks. In response to that limitation, the 1980 amendments to section 432 significantly broadened the Secretary's emergency power to address unsafe conditions or practices.

---

10. 45 U.S.C. § 64a(a)(1). *See* text accompanying note 7, *supra*.

11. 5 U.S.C. § 701 *et seq.* (1976). Subject matter jurisdiction is conferred on the district court under 28 U.S.C. § 1331 (Supp. V 1981) (federal question jurisdiction).

12. 45 U.S.C. § 432(a)(1).

13. *Louisville & N. R.R. v. Sullivan*, 471 F.Supp. 469 (D.D.C.1979), *stay pending appeal denied*, 617 F.2d 793 (D.C.Cir.1980).

Section 432 was originally enacted as section 203 of the Federal Railroad Safety and Hazardous Materials Transportation Control Act of 1970 (1970 act). The legislative history of the 1970 act reveals a congressional purpose to construct a comprehensive framework of rail safety legislation. The 1970 act declares as its purpose "to promote safety in *all areas of railroad operations,* to reduce railroad accidents, to reduce deaths and injuries to persons and to reduce property damage caused by accidents involving any carrier of hazardous materials."[14] (Emphasis supplied.)

The House report goes on to discuss the safety problems involved in rail accidents and identifies a number of areas, among others, in which the bill seeks to grant the Secretary authority to provide standards: rail quality, track and roadbed maintenance, emergency means of evacuation from cars, design and manufacture of train wheels, and industry standards.[15] Track, roadbed, equipment, and human failure are the key foci of the act because these areas were determined to be the major causative factors in rail accidents.

Specifically addressing the Secretary's emergency powers under section 432 (section 203 of the bill), the report goes on to state: [16]

> Section 203 authorizes the Secretary to order out of service any facility or piece of equipment determined by him to be in an unsafe condition and thereby creating an emergency situation involving a hazard of death or injury to persons affected by it. Such orders of the Secretary would not be subject to the rulemaking provisions of section 202(b) prior to issuance. Subsequently, however, opportunity for review must be provided in accordance with section 554 of title 5 of the United States Code. * * *

While the 1970 act does not specifically address sleeping accommodations, it does go on to grant the Secretary broad administrative powers under section 208, 45 U.S.C. § 437 (1976).[17]

In the legislative history of the 1976 amendments to the Safety Act, Congress urged the Secretary to exercise that administrative power with respect to sleeping quarters. The bill as proposed contained an earlier version of the current section 62(a)(3) sleeping quarters provisions. The committee, unable to consider the merits of, and report on, the provision because of time constraints, noted that several of the proposed amendments, the sleeping quarters amendment among them,[18]

> appear to be more appropriate for administrative rather than legislative action. However, if the agency which is responsible for implementing the Federal Railroad Safety Act is going to remain unresponsive to public petitions for rulemaking, then Congress may be forced to act. Congress could require, as it has done for other agencies, that the Federal Railroad Administration respond within a limited period of time to petitions for rulemaking filed with the agency. In the alternative, if the agency continues to be unresponsive, Congress could enact, and from time to time revise, specific safety regulations.

The National Transportation Safety Board supported the sleeping quarters provision as a safety measure.[19] The Federal Railroad Administration (FRA), however, recommended that the sleeping quarters provision be stricken or, in the alternative, that the proposed requirement be applicable only when the railroad voluntarily provides

---

**14.** H.R.Rep. No. 1194, 91st Cong., 2d Sess. 1, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4104. (Text of House report is slightly different from quoted language of reprint.)

**15.** H.R.Rep. No. 1194 at 9–10, 1970 U.S.Code Cong. & Ad.News at 4108.

**16.** H.R.Rep. No. 1194 at 18, 1970 U.S.Code Cong. & Ad.News at 4116.

**17.** H.R.Rep. No. 1194 at 21–22, 1970 U.S.Code Cong. & Ad.News at 4119–20.

**18.** S.Rep. No. 855, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Ad.News 1534, 1536–37.

**19.** S.Rep. No. 855 at 7, 1976 U.S.Code Cong. & Ad.News at 1538.

accommodations.[20] The sleeping quarters provision was enacted in 1976.[21]

Following the 1976 amendments to the Service Act, therefore, crew sleeping quarters were clearly a proper subject of the exercise of the Secretary's *general* powers. The Secretary's *emergency* powers could be brought to bear against *any* facility or piece of equipment involving a hazard of death or injury. On the basis of the legislative history, it appears that, following the 1976 amendments, the Secretary could have regulated with an emergency order under section 432 sleeping quarters involving a hazard of death or injury. Any lingering uncertainty in this conclusion was resolved by the 1980 amendments to the Safety Act.

The 1980 amendments were passed partly in response to the agency's inability to "deal with wide ranging and pervasive unsafe conditions and practices." [22] In *Louisville & N.R.R.*, the District Court for the District of Columbia held that the Administrator's order, placing a 30-mile per hour speed limit on all trains carrying hazardous material over the railroad's tracks and requiring inspections, violated the Safety Act because it was not limited to a facility or piece of equipment.[23]

Congress, addressing the limitations of that case, specifically sought to enlarge the Secretary's power to deal with both large scale and small scale emergencies. It stated: [24]

[T]he legislation will improve the FRA's ability to act in an emergency, deploy its resources more effectively, and recruit qualified inspectors. The scope of FRA's Emergency Order authority was narrowly construed in recent litigation over Emergency Order 11, which imposed certain restrictions on the Louisville and Nashville Railroad system. A U.S. Court of Appeals decision in that case held that the FRA had the power to deal with individual, localized problems involving specific pieces of track and equipment, but did not have the power to deal with wide-ranging and pervasive unsafe conditions and practices. As Circuit Judge Wilkey noted in his dissent to that opinion:

"Permeating the entire opinion ... is the strange assumption that the emergency powers of the Federal Railroad Administrator under 45 U.S.C. 432 are limited to little problems, that if what confronts us is a big problem, then somehow the Administrator has no authority to deal with it on an emergency basis. *Louisville & Nashville Railroad Co. v. Sullivan*, [617] F.2d [793] [( ]D.C.Cir., 1980)."

The amendment in Section 3 of this bill [section 432], by substituting "conditions or practices" for "facility or piece of equipment", affirms that FRA indeed has the power to deal with all safety problems in an emergency.

The legislative history goes on to state explicitly that the Secretary has the authority to deal with any actual emergency, whatever its origin.[25]

### EMERGENCY SAFETY ORDERS

Section 3 makes several revisions in section 203 of the Safety Act (45 U.S.C. 432) dealing with emergency powers.

Subsection (a) gives the Secretary the power to deal with the full range of safety problems which may give rise to an emergency situation. At the present time the statute explicitly addresses only an unsafe "facility" or "piece of equipment". However, unsound maintenance

---

**20.** S.Rep. No. 855 at 18, 1976 U.S.Code Cong. & Ad.News at 1549.

**21.** 45 U.S.C. § 62(a)(3).

**22.** H.R.Rep. No. 1025, 96th Cong., 2d Sess. 7, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3830, 3831.

**23.** *See* text accompanying note 13, *supra.* The order was also held to be so broad as to violate the due process clause of the fifth amendment.

**24.** H.R.Rep. No. 1025, 96th Cong., 2d Sess. 7, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3830, 3831–32.

**25.** H.R.Rep. No. 1025 at 12, 1980 U.S.Code Cong. & Ad.News at 3836.

and operating practices may give rise to situations as dangerous to employees and the public as individual track or freight car defects. Subsection (a) clarifies the Secretary's authority to deal with *any actual emergency, whatever its origin.* [Emphasis supplied.]

The Committee has reviewed FRA's eleven Emergency Orders. Some have tried to deal with broad safety problems, such as Emergency Order number 11, applicable to the Louisville and Nashville Railroad. Some of the broad orders, such as Emergency Order number 11, have been narrowly construed in court. It is the Committee's intent that this amendment affirms the power of the FRA to deal with broad safety problems in an emergency. Of course, the Emergency Order should not be broader than necessary to deal with the safety problem at issue.

Congress, in section 432, has given the Secretary of Transportation very broad emergency powers. Sleeping quarters are within the purview of the Secretary's general powers and, given the broad scope of the Secretary's emergency powers, as illuminated by the legislative history, we hold that unsafe conditions or practices involving a hazard of death or injury to persons that arise with respect to crew sleeping accommodations may be a proper subject of an emergency order under section 432.

### B.

Section 432(a) of the Safety Act provides that the Secretary's emergency power extends to unsafe conditions or practices, that create an emergency situation involving a hazard of death or injury to persons. Nothing in section 432 would appear to exclude sleeping quarters from the purview of the *broad* term "unsafe conditions or practices."

A contrary reading of section 432 would reach an anomalous result. In 1980, section 432 was revised to encompass "unsafe conditions or practices." The district judge found that the pre-1980 version of the act—

covering any "facility or piece of equipment"—was limited to freight car or track defects. The legislative history of the pre-1980 version of the statute *actually* addresses locomotives and safety appliances as well as track and freight car defects. These areas were identified as major safety problem areas in the legislative history and there does not appear to have been an attempt made explicitly to limit the pre-1980 coverage of section 432 solely to track and freight car defects. In any event, the 1980 amendments were intended to broaden substantially the scope of the Secretary's emergency powers.

Dangerous conditions or practices involving rolling stock are clearly a proper object of the exercise of the Secretary's emergency powers. Under a narrow reading of section 432, crew quarters constructed in rolling stock such as bunk cars—explicitly covered by section 62(a)(3)—would be a proper object of a section 432 emergency order. Crew quarters constructed in fixed, off-yard structures, however, would not be. Such fine parsing of the legislative scheme does not seem to us to be in concert with congressional intent, and we decline to adopt such a narrow reading of section 432.

### C.

The Secretary must have flexibility to deal with emergency situations under section 432. Congress has made it clear that the Secretary's power extends to any emergency situation. We therefore construe section 432 to provide the flexibility of response that Congress has mandated.

### D.

Our interpretation of section 432 does not conflict with the independent operation of section 62(a)(3). The Service Act prescribes minimum standards for accommodations, exclusively enforceable by the U.S. attorney. The Secretary must bring information establishing a violation of section 62(a)(3) to the attention of the U.S. attorney.[26]

26. 45 U.S.C. § 64a.

If conditions in a specific accommodation are so dangerous, so hazardous or life threatening, as to trigger the Secretary's emergency powers under section 432, those powers can also be brought to bear. The Secretary's exercise of emergency powers is independently reviewable under section 432(e). The two provisions are independent in operation and review. They do not conflict and may, in some extremely hazardous circumstances, complement one another.

## CONCLUSION

The Service Act provides no basis for relief in this case. We affirm the holding of the district court to that effect. Section 62(a)(3), however, is entirely independent of the Secretary's emergency powers under section 432. Several factors lead us to the conclusion that the Secretary of Transportation is empowered under section 432 to redress emergency situations arising with respect to crew sleeping quarters: the legislative history of the Federal Railroad Safety Act and the Hours of Service Act; a practical reading of the broad phrase "unsafe conditions or practices" in section 432; the need for flexibility in the exercise of the Secretary's emergency powers; and the lack of conflict between the statutes involved.

We make no ruling on the merits of appellants' claim. Appellants are free to pursue this claim under section 432(e) or to seek review of the Secretary of Transportation's refusal to lodge sufficient information with the U.S. Attorney under section 64a(b).

The judgment of the U.S. District Court for the Southern District of Alabama is AFFIRMED IN PART, REVERSED IN PART, and the case is REMANDED for proceedings on the merits of UTU's section 432 claim.